## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN OVERSIGHT,<br>1030 15th Street NW, B255<br>Washington, DC 20005<br><br>*Plaintiff,*<br><br>v.<br><br>U.S. DEPARTMENT OF JUSTICE,<br>950 Pennsylvania Avenue NW<br>Washington, DC 20530<br><br>*and*<br><br>FEDERAL BUREAU OF INVESTIGATION,<br>935 Pennsylvania Avenue NW<br>Washington, DC 20535<br><br>*Defendants.* | Case No. 25-cv-3200 |

## <u>COMPLAINT</u>

1.      The Trump Administration has obfuscated and refused to provide transparency into its handling of materials related to convicted sex offender Jeffrey Epstein, including his connections to President Trump, despite widespread public interest and newly released materials suggesting that the relationship between Epstein and President Trump was more robust than has been acknowledged. Instead, the administration has issued repeated, conflicting statements and conducted a potentially biased review of the files.

2.      Attorney General Bondi has stated that the Trump Administration is "commit[ted] to transparency and lifting the veil on the disgusting actions of Jeffrey Epstein and his co-conspirators."[1]

3.      Similarly, on February 27, 2025, FBI Director Kash Patel wrote on X (formerly Twitter) that: "The FBI is entering a new era—one that will be defined by integrity, accountability, and the unwavering pursuit of justice. There will be no cover-ups, no missing documents, and no stone left unturned . . . . If there are gaps, we will find them. If records have been hidden, we will uncover them. And we will bring everything we find to the [Department of Justice] to be fully assessed and transparently disseminated to the American people as it should be."[2]

4.      But the administration's actions belie these claims.

5.      On July 7, 2025, the U.S. Department of Justice (DOJ) and Federal Bureau of Investigation (FBI) released a two-page, unsigned memo (the "Epstein Memo") stating that the agencies had "conducted an exhaustive review of investigative holdings relating to Jeffrey Epstein."[3]

6.      This was a new effort initiated after the current administration took office.

7.      The Epstein Memo stated that DOJ and the FBI had found no "client list," no "credible evidence" that Epstein had "blackmailed prominent individuals as part of his actions," nor any "evidence that could predicate an investigation against uncharged third parties."[4]

---

[1] Ryan Lucas, *DOJ Says No Evidence Jeffrey Epstein Had a 'Client List' or Blackmailed Associates*, NPR (July 7, 2025, 2:28 PM), https://www.npr.org/2025/07/07/g-s1-76367/doj-jeffrey-epstein-memo.

[2] Kash Patel (@Kash_Patel), X (formerly Twitter) (Feb. 27, 2025, 6:20 pm), https://x.com/Kash_Patel/status/1895252771370344590?lang=en.

[3] U.S. Dep't of Just. & Fed. Bureau of Investigation, Memorandum (July 7, 2025), https://www.justice.gov/opa/media/1407001/dl?inline [hereinafter "Epstein Memo"]; *see also, e.g.*, Lucas, *supra* note 1.

[4] *Id.*

8.      The FBI's review included "digital searches of its databases, hard drives, and network drives as well as physical searches of squad areas, locked cabinets, desks, closets, and other areas where responsive material may have been stored."[5]

9.      These searches uncovered "more than 300 gigabytes of data and physical evidence."[6]

10.      The review was conducted by approximately 1,000 FBI personnel, who spent tens of thousands of hours on this effort.[7]

11.      The personnel conducting this review were instructed to "flag" any records mentioning Donald Trump.[8]

12.      The Epstein Memo raised more questions than it answered, contradicting prior statements by Trump Administration officials and prior promises to release the Epstein files.

13.      For example, in a February 2025 interview with Fox News, Attorney General Pam Bondi stated that Epstein's client list was "sitting on my desk right now to review."[9]

14.      This statement directly conflicts with the Epstein Memo's conclusion that no such client list exists.

15.      Troubling allegations have also been raised regarding the training or instructions given to the FBI personnel who reviewed the Epstein files.

---

[5] Epstein Memo, *supra* note 3.
[6] *Id.*
[7] *See* Letter from Richard J. Durbin, U.S. Senator, to Pam Bondi, Att'y Gen., U.S. Dep't of Just. (July 18, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-07-18%20RJD%20Letter%20to%20AG%20Bondi%20re%20Epstein.pdf [hereinafter "Durbin Letter"].
[8] *Id.*
[9] Lucas, *supra* note 1.

16.     On July 18, 2025, Senator Richard Durbin wrote to Bondi and stated: "My office was told that these personnel were instructed to 'flag' any records in which President Trump was mentioned."[10]

17.     But Defendants have failed to release any records regarding the training or instructions given to the FBI personnel who reviewed the Epstein files.

18.     These failures contradict statements by Bondi that the Trump Administration is "commit[ed] to transparency and lifting the veil on the disgusting actions of Jeffrey Epstein and his co-conspirators."[11]

19.     Indeed, the Trump Administration has sought to further obfuscate the issues by seeking a court order to release "the 70 odd pages of *Epstein* grand jury materials" instead of simply releasing "100,000 pages of *Epstein* files and materials" in its own possession. *United States v. Epstein*, No. 19 CR. 490 (RMB), 2025 WL 2407599, at *4 (S.D.N.Y. Aug. 20, 2025).

20.     The court rejected this effort as a "diversion," in part because the materials in the government's possession "dwarfed" the small selection of materials provided to the grand jury. *Id.*

21.     Meanwhile, shortly after DOJ and the FBI released the Epstein Memo, the *Wall Street Journal* reported that Trump had written and signed a letter to Epstein for inclusion in a book given to Epstein for his birthday in 2003.[12] The letter was a suggestive poem written on a hand-drawn illustration of a naked woman.[13]

---

[10] *See* Durbin Letter, *supra* note 7, at 2.

[11] Lucas, *supra* note 1.

[12] Khadeeja Safdar & Joe Palazzolo, *Jeffrey Epstein's Friends Sent Him Bawdy Letters for a 50th Birthday Album. One Was From Donald Trump*., Wall Street J. (July 17, 2025, 6:45 PM), https://www.wsj.com/politics/trump-jeffrey-epstein-birthday-letter-we-have-certain-things-in-common-f918d796?mod=article_inline.

[13] Khadeeja Safdar et al., *A Visual Breakdown of the Trump Birthday Letter to Epstein*, Wall Street J. (updated Sept. 8, 2025, 4:34 PM), https://www.wsj.com/us-news/law/trump-jeffrey-epstein-letter-birthday-book-analysis-0bbeeaf6.

22.     Trump denies writing the letter.[14]

23.     On July 29, 2025, American Oversight sent three FOIA requests to the DOJ and FBI seeking records with the potential to shed light on what training materials and other guidance were provided to personnel who reviewed the investigative holdings relating to Jeffrey Epstein and his criminal case, the roles of Attorney General Bondi and FBI Director Kash Patel in shaping the review, and whether any personnel expressed concerns or dissent about the conduct of this review.

24.     In light of the need to inform the public about these matters, Plaintiff American Oversight now brings this action against DOJ and the FBI under FOIA, 5 U.S.C. § 552, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201 and 2202, seeking declaratory and injunctive relief to compel compliance with the requirements of FOIA and the release of records responsive to American Oversight's FOIA requests.

<u>**JURISDICTION AND VENUE**</u>

25.     This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. §§ 1331, 2201, and 2202.

26.     Venue is proper in this district pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

27.     Because Defendants have failed to comply with the applicable time-limit provisions of FOIA, American Oversight is deemed to have exhausted its administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i) and is now entitled to judicial action enjoining Defendants from continuing to withhold department or agency records and ordering the production of department or agency records improperly withheld.

---

[14] Safdar et al., *supra* note 13.

## PARTIES

28.     Plaintiff American Oversight is a nonpartisan, non-profit section 501(c)(3) organization primarily engaged in disseminating information to the public. American Oversight is committed to promoting transparency in government, educating the public about government activities, and ensuring the accountability of government officials. Through research and FOIA requests, American Oversight uses the information it gathers, and its analysis of it, to educate the public about the activities and operations of the federal government through reports, published analyses, press releases, and other media. The organization is incorporated under the laws of the District of Columbia.

29.     Defendant DOJ is a department of the executive branch of the U.S. government headquartered in Washington, D.C., and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). DOJ has possession, custody, and control of records that American Oversight seeks.

30.     Defendant FBI is a department of the executive branch of the U.S. government headquartered in Washington, DC, and an agency of the federal government within the meaning of 5 U.S.C. § 552(f)(1). FBI has possession, custody, and control of records that American Oversight seeks.

## STATEMENT OF FACTS

31.     On July 29, 2025, American Oversight sent three FOIA requests regarding the training provided to personnel tasked with reviewing the Epstein files.

32.     Two of these requests were sent to offices within DOJ and are largely similar to each other, though not identical. The other request was sent to the FBI.

*OIP Training Request*

33.    On July 29, 2025, American Oversight sent the first request to DOJ's Office of Information Policy (OIP) ("OIP Training Request"). It bears internal tracking number DOJ-OIP-25-1860 and seeks the following records created or otherwise in use between March 7, 2025 and April 7, 2025:

1. Records reflecting any training or instructions given to DOJ personnel related to review of investigative holdings regarding Jeffrey Epstein. Such training or instructions include, but are not limited to, materials regarding when and how these investigative holdings should be redacted, contents that should be noted or flagged (including mentions of President Trump), or the operational security of this review.

   Responsive records may include, but should not be limited to, training videos, PDFs, slide decks, informational handouts, summary documents, handwritten or typed notes, letters, memoranda, or any other records used in trainings and instructions.

   Additional responsive records may include, but should not be limited to, records reflecting the contents of training sessions or meetings during which review instructions were provided, such as meeting agendas, minutes, notes, transcripts, recordings, or materials displayed or exchanged during the session or meeting (such as slide decks or handouts), materials provided in advance of the session or meeting (such as preparation materials provided with a meeting invitation), or any materials provided in follow-up to the session or meeting.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent</u> by any of the DOJ officials listed below that contain both a key term from Column A and a key term from Column B.

   <u>DOJ Officials:</u>

   i.      Attorney General Pamela "Pam" Bondi
   ii.     Deputy Attorney General Todd Blanche
   iii.    Anyone serving as Chief of Staff in the Office of the Attorney General or the Office of the Deputy Attorney General
   iv.    Anyone serving as Senior Advisor in the Office of the Attorney General or the Office of the Deputy Attorney General
   v.     Deputy Assistant Attorney General Lanora Pettit
   vi.    Principal Associate Deputy Attorney General Emil Bove
   vii.   Associate Deputy Attorney General James McHenry
   viii.  Chief of Staff Chad Mizelle
   ix.    Counselor to the Attorney General Sean Day
   x.     Associate Deputy Attorney General Vetan Kapoor

xi.    Anyone serving as Senior Advisor

<u>Key Terms:</u>

| Column A | Column B |
|---|---|
| i.    Epstein | a.   review* |
| | b.   train* |
| | c.   instruct* |
| | d.   flag* |
| | e.   tag* |
| | f.   exhaustive |
| | g.   "investigative holdings" |
| | h.   client |
| | i.   clients |
| | j.   "Information Management Division" |
| | k.   IMD |
| | l.   "Information Dissemination" |
| | m.   RIDS |
| | n.   "R/IDS" |
| | o.   "New York Field Office" |
| | p.   NYFO |
| | q.   sheet |
| | r.   sheets |
| | s.   Excel |
| | t.   president |
| | u.   Trump |
| | v.   DJT |
| | w.   DT |
| | x.   POTUS |

Please note that American Oversight is using the asterisk (*) to designate the standard use of "wildcards" in the search for responsive records. For example, a search for "review*" would return all the following: reviews, reviewing, reviewed, etc. If your agency is unable to search for wildcards, please advise so that we may specifically include the variations that we would like searched.

To provide additional clarification on this key term list, an email sent by an official that included both "Epstein" and "review" would be responsive. An email sent by an official that included "Epstein" but did not include any of the terms listed in Column B would not be responsive.

To the extent that your agency has the capacity to run Boolean searches, American Oversight believes the following search string is an example of one that would be most effective in the search for responsive records: "Epstein" AND ("review" OR "train" OR "instruct"). American Oversight is available to work with you to construct an appropriate search, based on your search capabilities, to most efficiently identify responsive records.

3. All formal or informal final directives (including informal email communications), guidance, protocols, or policies created by, issued to, or otherwise provided to DOJ regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited any such directives, guidance, protocols, policies, or rules regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

4. All official and unofficial dissent memoranda and complaints (such as formal memoranda, ethics complaints, or informal email communications) submitted to DOJ regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited to, any such dissent memoranda and/or complaints regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

For part 4 of this request, American Oversight requests all such documents received from employees, appointees, board members, or contractors of DOJ. To be clear, American Oversight is not asking your agency to release the names of any individuals who have submitted responsive documents and does not object to withholding the name of any individual expressing dissent.

*See* Ex. A.

34.    On August 26, 2025, OIP acknowledged receipt of this request and assigned it agency tracking number FOIA-2025-06123. *See* Ex. B.

35.    OIP further stated that the request fell within the statutory "unusual circumstances," and thus "need[ed] to extend the time limit to respond to your request beyond the ten additional days provided by the statute." *Id.*

36.    American Oversight has received no further communications regarding the OIP Training Request.

*FBI Training Request*

37.    On July 29, 2025, American Oversight sent a second request, to the FBI ("FBI Training Request"). It bears internal tracking number DOJ-FBI-25-1861 and seeks the following records created or otherwise in use between March 7, 2025 and April 7, 2025:

1. Records reflecting any training or instructions given to FBI personnel related to review of investigative holdings regarding Jeffrey Epstein. Such training or instructions include, but are not limited to, materials regarding when and how these investigative holdings should be redacted, contents that should be noted or flagged (including mentions of President Trump), or the operational security of this review.

   Responsive records may include, but should not be limited to, training videos, PDFs, slide decks, informational handouts, summary documents, handwritten or typed notes, letters, memoranda, or any other records used in trainings and instructions.

   Additional responsive records may include, but should not be limited to, records reflecting the contents of training sessions or meetings during which review instructions were provided, such as meeting agendas, minutes, notes, transcripts, recordings, or materials displayed or exchanged during the session or meeting (such as slide decks or handouts), materials provided in advance of the session or meeting (such as preparation materials provided with a meeting invitation), or any materials provided in follow-up to the session or meeting.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent</u> by any of the FBI officials listed below that contain both a key term from Column A and a key term from Column B.

   <u>FBI Officials:</u>

   i.      Director Kashyap "Kash" Patel
   ii.     Deputy Director Daniel "Dan" Bongino
   iii.    Chief of Record/Information Dissemination Section (RIDS) Michael G. Seidel
   iv.     Anyone serving as Chief of Staff
   v.      Anyone serving as Senior Advisor
   vi.     Anyone serving as Assistant Director of the Information Management Division
   vii.    Anyone serving as Deputy Chief of RIDS

   <u>Key Terms:</u>

| Column A | Column B |
|---|---|
| i.  Epstein | a.  review* |
| | b.  train* |
| | c.  instruct* |
| | d.  flag* |
| | e.  tag* |
| | f.  exhaustive |
| | g.  "investigative holdings" |
| | h.  client |
| | i.  clients |
| | j.  "Information Management Division" |
| | k.  IMD |

| | |
|---|---|
| | l.   "Information Dissemination" |
| | m.  RIDS |
| | n.   "R/IDS" |
| | o.   "New York Field Office" |
| | p.   NYFO |
| | q.   sheet |
| | r.   sheets |
| | s.   Excel |
| | t.   president |
| | u.   Trump |
| | v.   DJT |
| | w.  DT |
| | x.   POTUS |

Please note that American Oversight is using the asterisk (*) to designate the standard use of "wildcards" in the search for responsive records. For example, a search for "review*" would return all the following: reviews, reviewing, reviewed, etc. If your agency is unable to search for wildcards, please advise so that we may specifically include the variations that we would like searched.

To provide additional clarification on this key term list, an email sent by an official that included both "Epstein" and "review" would be responsive. An email sent by an official that included "Epstein" but did not include any of the terms listed in Column B would not be responsive.

To the extent that your agency has the capacity to run Boolean searches, American Oversight believes the following search string is an example of one that would be most effective in the search for responsive records: "Epstein" AND ("review" OR "train" OR "instruct"). American Oversight is available to work with you to construct an appropriate search, based on your search capabilities, to most efficiently identify responsive records.

3.  All formal or informal final directives (including informal email communications), guidance, protocols, or policies created by, issued to, or otherwise provided to FBI regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited any such directives, guidance, protocols, policies, or rules regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

4.  All official and unofficial dissent memoranda and complaints (such as formal memoranda, ethics complaints, or informal email communications) submitted to FBI regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited to, any such dissent memoranda and/or complaints regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

For part 4 of this request, American Oversight requests all such documents received from employees, appointees, board members, or contractors of FBI. To be clear, American Oversight is not asking your agency to release the names of any individuals who have submitted responsive documents and does not object to withholding the name of any individual expressing dissent.

American Oversight believes your office is in the best position to identify where all responsive records are likely to reside, but believes a reasonable search should include, at minimum the Office of the Director, the Office of the Deputy Director, the Criminal Investigative Division, the Information Management Division, the Record/Information Dissemination Section, and the New York Field Office.

*See* Ex. C.

38.     On August 13, 2025, the FBI acknowledged receipt of this request and assigned it agency tracking number 1676999-000. *See* Ex. D.

39.     The FBI further stated that "unusual circumstances" would "delay [its] ability to make a determination on your request within 20 days." *See id.*

40.     American Oversight has received no further communications regarding the FBI Training Request.

*OLC Training Request*

41.     On July 29, 2025, American Oversight sent a third request, to the DOJ's Office of Legal Counsel (OLC) ("OLC Training Request"). It bears internal tracking number DOJ-OLC-25-1862 and seeks the following records created or otherwise in use between March 7, 2025 and April 7, 2025:

1.  Records reflecting any training or instructions given to OLC personnel related to review of investigative holdings regarding Jeffrey Epstein. Such training or instructions include, but are not limited to, materials regarding when and how these investigative holdings should be redacted, contents that should be noted or flagged (including mentions of President Trump), or the operational security of this review.

    Responsive records may include, but should not be limited to, training videos, PDFs, slide decks, informational handouts, summary documents, handwritten or typed notes, letters, memoranda, or any other records used in trainings and instructions.

Additional responsive records may include, but should not be limited to, records reflecting the contents of training sessions or meetings during which review instructions were provided, such as meeting agendas, minutes, notes, transcripts, recordings, or materials displayed or exchanged during the session or meeting (such as slide decks or handouts), materials provided in advance of the session or meeting (such as preparation materials provided with a meeting invitation), or any materials provided in follow-up to the session or meeting.

2. All email communications (including emails, email attachments, complete email chains, calendar invitations, and calendar invitation attachments) <u>sent</u> by any of the DOJ officials listed below that contain both a key term from Column A and a key term from Column B.

<u>DOJ Officials:</u>

i.      Attorney General Pamela "Pam" Bondi
ii.     Deputy Attorney General Todd Blanche
iii.    Anyone serving as Chief of Staff in the Office of the Attorney General or the Office of the Deputy Attorney General
iv.     Anyone serving as Senior Advisor in the Office of the Attorney General or the Office of the Deputy Attorney General
v.      Deputy Assistant Attorney General Lanora Pettit
vi.     Principal Associate Deputy Attorney General Emil Bove
vii.    Associate Deputy Attorney General James McHenry
viii.   Chief of Staff Chad Mizelle
ix.     Counselor to the Attorney General Sean Day
x.      Associate Deputy Attorney General Vetan Kapoor
xi.     Anyone serving as Senior Advisor

<u>Key Terms:</u>

| Column A | Column B |
| --- | --- |
| i.      Epstein | a.   review* |
|  | b.   train* |
|  | c.   instruct* |
|  | d.   flag* |
|  | e.   tag* |
|  | f.   exhaustive |
|  | g.   "investigative holdings" |
|  | h.   client |
|  | i.   clients |
|  | j.   "Information Management Division" |
|  | k.   IMD |
|  | l.   "Information Dissemination" |
|  | m.  RIDS |
|  | n.   "R/IDS" |
|  | o.   "New York Field Office" |

|   | p.  NYFO |
|---|---|
|   | q.  sheet |
|   | r.  sheets |
|   | s.  Excel |
|   | t.  president |
|   | u.  Trump |
|   | v.  DJT |
|   | w.  DT |
|   | x.  POTUS |

Please note that American Oversight is using the asterisk (*) to designate the standard use of "wildcards" in the search for responsive records. For example, a search for "review*" would return all the following: reviews, reviewing, reviewed, etc. If your agency is unable to search for wildcards, please advise so that we may specifically include the variations that we would like searched.

To provide additional clarification on this key term list, an email sent by an official that included both "Epstein" and "review" would be responsive. An email sent by an official that included "Epstein" but did not include any of the terms listed in Column B would not be responsive.

To the extent that your agency has the capacity to run Boolean searches, American Oversight believes the following search string is an example of one that would be most effective in the search for responsive records: "Epstein" AND ("review" OR "train" OR "instruct"). American Oversight is available to work with you to construct an appropriate search, based on your search capabilities, to most efficiently identify responsive records.

3.  All formal or informal final directives (including informal email communications), guidance, protocols, or policies created by, issued to, or otherwise provided to OLC regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited any such directives, guidance, protocols, policies, or rules regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

4.  All official and unofficial dissent memoranda and complaints (such as formal memoranda, ethics complaints, or informal email communications) submitted to OLC regarding the review of investigative holdings relating to Jeffrey Epstein. This includes, but is not limited to, any such dissent memoranda and/or complaints regarding the redaction of these investigative holdings, the flagging of certain material, or the operational security of this review.

For part 4 of this request, American Oversight requests all such documents received from employees, appointees, board members, or contractors of OLC. To be clear, American Oversight is not asking your agency to release the names of any individuals who have submitted responsive documents and does not object to withholding the name of any individual expressing dissent.

*See* Ex. E.

42.    On August 4, 2025, OLC acknowledged receipt of this request and assigned it agency tracking number FY25-390. *See* Ex. F.

43.    American Oversight has received no further communications regarding the OLC Training Request.

*Exhaustion of Administrative Remedies*

44.    As of the date of this Complaint, Defendants have failed to either: (a) notify American Oversight of a final determination regarding American Oversight's FOIA requests, including the scope of responsive records Defendants intend to produce or withhold and the reasons for any withholdings; or (b) produce the requested records or demonstrate that the requested records are lawfully exempt from production.

45.    More than 30 working days have passed since all FOIA requests at issue in this lawsuit were filed.

46.    Through Defendants' failure to respond to American Oversight's FOIA requests within the time period required by law, American Oversight has constructively exhausted its administrative remedies and seeks immediate judicial review.

**COUNT I**
**Violation of FOIA, 5 U.S.C. § 552**
**Failure to Conduct Adequate Searches for Responsive Records**

47.    American Oversight repeats the allegations in each of the foregoing paragraphs and incorporates them as though fully set forth herein.

48.    American Oversight properly requested records within Defendants' possession, custody, and control.

49.    Defendants are agencies subject to and within the meaning of FOIA, and they must therefore make reasonable efforts to search for requested records.

50.    Defendants have failed to promptly and adequately search for agency records that are responsive to American Oversight's FOIA requests.

51.    The failure of Defendants to conduct adequate searches for responsive records violates FOIA.

52.    Plaintiff American Oversight is therefore entitled to injunctive and declaratory relief requiring Defendants to promptly make reasonable efforts to search for records responsive to American Oversight's FOIA requests.

**COUNT II**
**Violation of FOIA, 5 U.S.C. § 552**
**Wrongful Withholding of Non-Exempt Responsive Records**

53.    American Oversight repeats the allegations in each of the foregoing paragraphs and incorporates them as though fully set forth herein.

54.    American Oversight properly requested records within Defendants' possession, custody, and control.

55.    Defendants are agencies subject to FOIA and must therefore release in response to FOIA requests any non-exempt records and provide lawful reasons for withholding any materials.

56.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to produce non-exempt records responsive to its FOIA requests.

57.    Defendants are wrongfully withholding non-exempt agency records requested by American Oversight by failing to segregate exempt information in otherwise non-exempt records responsive to American Oversight's FOIA requests.

58.     Defendants' failure to provide all non-exempt responsive records violates FOIA and applicable regulations.

59.     Plaintiff American Oversight is therefore entitled to declaratory and injunctive relief requiring Defendants to promptly produce all non-exempt records responsive to its FOIA requests and provide indexes justifying the withholding of any responsive records withheld under claim of exemption.

## **REQUESTED RELIEF**

WHEREFORE, American Oversight respectfully requests the Court to:

(1) Order Defendants to conduct a search or searches reasonably calculated to uncover all records responsive to American Oversight's FOIA requests;

(2) Order Defendants to produce, within 20 days of the Court's order, or by such other date as the Court deems appropriate, any and all non-exempt records responsive to American Oversight's FOIA requests with indexes justifying the withholding of any responsive records withheld under claim of exemption;

(3) Enjoin Defendants from continuing to withhold any and all non-exempt records responsive to American Oversight's FOIA requests;

(4) Award American Oversight the costs of this proceeding, including reasonable attorneys' fees and other litigation costs reasonably incurred in this action, pursuant to 5 U.S.C. § 552(a)(4)(E); and

(5) Grant American Oversight such other relief as the Court deems just and proper.


Dated: September 15, 2025                    Respectfully submitted,

                                             */s/ David Kronig*
                                             David Kronig

D.C. Bar No. 1030649
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(202) 897-3915
david.kronig@americanoversight.org
*Counsel for Plaintiff*