**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

|  |  |  |
|---|---|---|
| AMERICAN OVERSIGHT, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | Case No. 25-cv-3200-JEB |
| | ) | |
| U.S. DEPARTMENT OF JUSTICE, *et al.*, | ) | |
| | ) | |
| *Defendants.* | ) | |

**<u>MEMORANDUM IN SUPPORT OF PLAINTIFF'S MOTION
FOR A PRELIMINARY INJUNCTION</u>**

**TABLE OF CONTENTS**

INTRODUCTION ............................................................................................................... 1

BACKGROUND ............................................................................................................... 2

    I.    Defendants' Statements Raise Widespread Concern About the Integrity of Their Handling of the Epstein Files. ................................................................. 6

    II.    American Oversight Requests Records Regarding Defendants' Review of the Epstein Files and Files Suit When Defendants Fail to Respond. ........................... 7

    III.    The Epstein Files Transparency Act Requires the Department of Justice to Release All Unclassified Information in the Epstein Files by the End of 2025. .... 9

    IV.    The Department of Justice's Shifting Statements About Its Review Protocols, Compliance with the Act, and Contents of the Files. ........................................... 9

    V.    American Oversight's Expedited Processing Request. ......................................... 13

LEGAL STANDARD ...................................................................................................... 14

ARGUMENT .................................................................................................................. 15

    I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF. ........................................................................................................... 16

    II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION. ................................................................................................. 16

        A.    American Oversight Is Likely to Succeed on the Merits Because Defendants Failed to Comply with FOIA's Deadlines. ........................... 17

        B.    American Oversight Will Be Irreparably Harmed Without the Requested Relief Because Attorney General Bondi Has Been Subpoenaed for a Deposition and the Requested Records Are Directly Relevant to Matters About Which She Is Likely to Be Questioned. ........................................ 19

            1.    In light of Attorney General Bondi's approaching deposition, time is of the essence in obtaining records that show how Defendants instructed review of the Epstein files. ........................................... 20

            2.    The House Oversight Committee needs the requested records to effectively question Attorney General Bondi and test the truthfulness of her answers in her upcoming deposition. ............. 22

        C.    The Public Interest and Balance of the Equities Weigh in Favor of Extraordinary Relief in Light of Attorney General Bondi's Rapidly Approaching Deposition. ......................................................................... 25

III.    The Court Should Not Require American Oversight to Post a Bond. .................. 27

CONCLUSION........................................................................................................................... 28

## TABLE OF AUTHORITIES

Page(s)

**Cases**

*Aamer v. Obama,*
  742 F.3d 1023 (D.C. Cir. 2014)......................................................................14-15

*Al-Fayed v. CIA,*
  254 F.3d 300 (D.C. Cir. 2001)............................................................................ 17

*Am. Immigr. Council v. U.S. Dep't of Homeland Sec.,*
470 F. Supp. 3d 32 (D.D.C. 2020) ................................................................. 20, 23

*Am. Oversight v. U.S. Dep't of State,*
  414 F. Supp. 3d 182 (D.D.C. 2019)................................................................Passim

*Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.,*
  498 F. Supp. 3d 87 (D.D.C. 2020)...................................................................... 20

*Chaplaincy of Full Gospel Churches v. England,*
  454 F.3d 290 (D.C. Cir. 2006)............................................................................ 15

*Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n,*
  711 F.3d 180 (D.C. Cir. 2013)............................................................................ 18

*Citizens for Responsibility and Ethics in Washington  v. Dep't of Just.,*
No. 25-cv-04426-CKK, Order (Feb. 19, 2026) ............................................................ 20

*City of Atlanta v. Metro. Atlanta Rapid Transit Auth.,*
  636 F.2d 1084 (5th Cir. 1981) ........................................................................... 28

*Ctr. for Pub. Integrity v. United States Dep't of Def.,*
  411 F. Supp. 3d 5 (D.D.C. 2019)....................................................................Passim

*Ctr. To Prevent Handgun Violence v. U.S. Dep't of Treasury,*
  49 F. Supp. 2d 3 (D.D.C. 1999).......................................................................... 25

*Elec. Info. Ctr. v. Dep't of Just.,*
  15 F. Supp. 3d 32 (D.D.C. 2014)......................................................................... 15

*Elec. Privacy Info. Ctr. v. U.S. Dep't of Just.,*
  416 F. Supp. 2d 30 (D.D.C. 2006)............................................................... 17, 20, 24

*Jacksonville Port Auth. v. Adams,*
  556 F.2d 52 (D.C. Cir. 1977).............................................................................. 25

*Mexichem Specialty Resins, Inc. v. Env't Prot. Agency*,
  787 F.3d 544 (D.C. Cir. 2015) ............................................................................................. 15

*Mich. Citizens for an Indep. Press v. Thornburgh*,
  No. CIV.A. 88-2322, 1988 WL 90388 (D.D.C. Aug. 17, 1988) ............................................ 28

*Nat'l Archives & Records Admin. v. Favish*,
  541 U.S. 157 (2004) ............................................................................................................. 19

*Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*,
  No. CV 25-239 (LLA), 2025 WL 597959 (D.D.C. Feb. 25, 2025) ........................................ 27

*Nken v. Holder*,
  556 U.S. 418 (2009) ............................................................................................................. 17

*NLRB v. Robbins Tire & Rubber Co.*,
  437 U.S. 214 (1978) ............................................................................................................. 25

*Oglesby v. Dep't of the Army*,
  920 F.2d 57 (D.C. Cir. 1990) ................................................................................................ 16

*Payne Enters. v. United States*,
  837 F.2d 486 (D.C. Cir. 1988) .............................................................................................. 19

*People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*,
  766 F.2d 1319 (9th Cir. 1985) .............................................................................................. 28

*Serono Labs., Inc. v. Shalala*,
  158 F.3d 1313 (D.C. Cir. 1998) ............................................................................................ 17

*Shaw v. Austin*,
  539 F. Supp. 3d 169 (D.D.C. 2021) ...................................................................................... 15

*U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*,
  489 U.S. 749 (1989) ............................................................................................................. 25

*U.S. Dep't of Just. v. Tax Analysts*,
  492 U.S. 136 (1989) ............................................................................................................. 18

*Wash. Post v. Dep't of Homeland Sec.*,
  459 F. Supp. 2d 61 (D.D.C. 2006) .............................................................................. 16, 23, 25

*Winter v. Nat. Res. Def. Council*,
  555 U.S. 7 (2008) ........................................................................................................... 15, 26

**Statutes**

5 U.S.C. § 552(a) ............................................................................................ 16, 18, 26
Pub. L. No. 119-38, § 2(a), 139 Stat. 656-57 (2025) ........................................ 3, 9, 19, 22

**Other Authorities**

H.R. 4405, Epstein Files Transparency Act. ................................................................ 9
H.R. Rep. No. 93-876 (1974) .................................................................................... 16

Victoria Bekiempis, *Nearly All Epstein Files Still Unreleased a Month After Congress Deadline*,
    The Guardian (Jan. 19, 2026, 8:00 AM), https://www.theguardian.com/us-
    news/2026/jan/19/jeffrey-epstein-files-unreleased-trump-doj ................................. 10

Anna Betts, *US Legislators Say Justice Department Is Violating Law by Not Releasing All
    Epstein Files*, The Guardian (Dec. 19, 2025, 6:15 PM), https://www.theguardian.com/us-
    news/2025/dec/19/epstein-files-release-deadline ................................................. 10

Louis Casiano & Chad Pergram, *House Oversight Committee Demands Depositions
    from Bondi and Lutnick in Epstein Probe,* Fox News (Mar. 11, 2026, 7:43 PM),
    https://www.foxnews.com/politics/house-oversight-committee-demands-depositions-bondi-
    lutnick-epstein-probe ...................................................................... 1, 5, 24

C-SPAN, *User Clip: May 7, 2025: AG Bondi Pivots to CSAM Narrative in Epstein Review* (May
    7, 2025), https://www.c-span.org/clip/white-house-event/user-clip-may-7-2025-ag-bondi-
    pivots-to-csam-narrative-in-epstein-review/5167343 .......................................... 13

Steve Eder & Devlin Barrett, *Trump Files Missing in Epstein Release Highlight Justice Dept.'s
    Missteps*, N.Y. Times (March 12, 2026, 10:11 AM),
    https://www.nytimes.com/2026/03/11/us/politics/trump-epstein-files-fbi-doj.html .. 10, 11, 21

Katherine Faulders *et al.*, *DOJ, Pressured by Trump Supporters, Pushes FBI to Release More
    Epstein Files: Sources*, ABC 7 Chicago, Mar. 20, 2025,
    https://abc7chicago.com/post/jeffrey-epstein-doj-pressured-trump-supporters-pushes-fbi-
    release-more-files-sources/16057882/ .......................................................... 6

FBI, *Epstein Overview: FBI Response*, *available at*
    https://www.justice.gov/epstein/files/DataSet%209/EFTA00172473.pdf  ("Epstein
    Overview: FBI Response." .................................................................... 11

Stephen Fowler, *Justice Department Withheld and Removed Some Epstein Files Related to
    Trump*, NPR (Feb. 24, 2026, 2:55 PM), https://www.npr.org/2026/02/24/nx-s1-
    5723968/epstein-files-trump-accusation-maxwell ............................................ 4, 11

Stephen Fowler, *With Few Epstein Files Released, Conspiracy Theories Flourish and
Questions Remain*, NPR (Jan. 2, 2026 5:00 AM), https://www.npr.org/2026/01/02/nx-s1-
    5662638/epstein-files-release-trump-conspiracy-2026 ....................................... 10

Hailey Fuchs, *House Oversight Chair Moving Quickly To Schedule Epstein Testimony With Bondi, Lutnick,* Politico (March 11, 2026, 10:55am ET), https://www.politico.com/live-updates/2026/03/11/congress/bondi-and-lutnick-in-the-hot-seat-soon-00822724 ............. 5, 13

Hailey Fuchs, *Pam Bondi's in Trouble with Republicans on Capitol Hill*, Politico (Mar. 6, 2026, 1:40 PM), https://www.politico.com/news/2026/03/06/pam-bondi-epstein-subpoena-00816820.................................................................................................................... 12, 23

Kayla Gaskins, *DOJ Declares Full Release of Epstein Files, But List of 300 Names Sparks Backlash*, ABC 7 News Little Rock (Feb. 16, 2026 4:02 PM), https://katv.com/news/nation-world/doj-declares-full-release-of-epstein-files-but-list-of-300-names-sparks-bipartisan-backlash-pam-bondi-elvis-madonna-princess-dianna-marilyn-monroe-kurt-cobain-larry-nasser-janis-joplin-thomas-massie-ro-khanna-lutnick-wasserman-andrew........................... 11

Allison Gill, *The Epstein Cover-Up at the FBI*, The Breakdown, July 20, 2025, https://www.muellershewrote.com/p/the-epstein-cover-up-at-the-fbi.................................... 7

Dareh Gregorian *et al.*, *House Oversight Committee Votes to Subpoena Pam Bondi for Testimony on Epstein Files*, NBC News (Mar. 4, 2026, 6:33 PM), https://www.nbcnews.com/politics/justice-department/pam-bondi-subpoenaed-testify-epstein-files-house-oversight-committee-rcna261779............................................................ 12

Sadie Gurman & Caitlin Ostroff, *There Are 47,635 Epstein Files Offline for Review, DOJ Says*, Wall St. J. (Mar. 3, 2026, 6:05 PM), https://www.wsj.com/us-news/law/there-are-47-635-epstein-files-offline-for-review-doj-says-bf2b31fe ........................................................... 4, 11

Sudiksha Kochi & Rebecca Beitsch, *Democrats Demand Special Counsel Investigation of Bondi, Accusing Her of Perjury*, The Hill (Feb. 25, 2026, 9:00 AM), https://thehill.com/homenews/house/5753607-bondi-perjury-trump-evidence/............... 12, 22

Letter from Richard J. Durbin, U.S. Senator, to Pam Bondi, Att'y Gen., U.S. Dep't of Just. (July 18, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-07-18%20RJD%20Letter%20to%20AG%20Bondi%20re%20Epstein.pdf. ................................ 6

Nancy Mace (@RepNancyMace), X (Mar. 4, 2026, at 1:02 PM), https://x.com/RepNancyMace/status/2029256140190523658. ........................................ 4, 12

Memorandum from the Off. of the Deputy Att'y Gen. re: Attorney Review Protocol for Epstein Files (Jan. 4, 2026), *available at* https://www.justice.gov/media/1426281/dl?inline ....................................................... 10

Erica Orden, *Justice Department Publishes Documents with Sexual Assault Allegations Against Trump*, Politico (Mar. 5, 2026, 10:31 PM), https://www.politico.com/news/2026/03/05/donald-trump-epstein-files-allegations-00816123 ........................................................................................................................... 4, 12

Evan Perez & Hannah Rabinowitz, *FBI's Weekend Homework: Redact the Epstein Files*, CNN (March 25, 2025, 10:00 AM), https://www.cnn.com/2025/03/22/politics/fbi-redacting-epstein-files ................................................................................................................ 10

Chad Pergram (@ChadPergram), X (Mar. 11, 2026, at 7:25 PM), https://x.com/chadpergram/status/2031874175803998210 .................................................. 14

Press Release, Sen. Richard Durbin, "During Senate Judiciary Committee Oversight Hearing, AG Bondi Refuses to Answer Durbin's Questions on Whether DOJ Was Consulted by the White House Regarding Deploying the National Guard to Chicago" (Oct. 7, 2025), *available at* https://www.durbin.senate.gov/newsroom/press-releases/during-senate-judiciary-committee-oversight-hearing-ag-bondi-refuses-to-answer-durbins-questions-on-whether-doj-was-consulted-by-the-white-house-regarding-deploying-the-national-guard-to-chicago ........ 7

Eric Tucker & Alanna Durkin Richer, *Mystery Surrounds the Jeffrey Epstein Files After Bondi Claims 'Tens of Thousands' of Videos*, AP (July 1, 2025, 6:07 PM), https://apnews.com/article/justice-department-jeffrey-epstein-pam-bondi-trump-fa39193d5b5ff91970428bf077a5ce44 ................................................................................. 13

**INTRODUCTION**

With questions mounting about the government's handling of the Epstein files and Attorney General Pam Bondi facing a subpoena for imminent testimony about her agency's conduct, the need for the records at issue in this case has become critically urgent, and American Oversight seeks a preliminary injunction requiring rapid production of them.

This lawsuit concerns whether the United States Department of Justice ("DOJ") and Federal Bureau of Investigation ("FBI") exercised the might of the government not to protect the survivors of notorious sex trafficker Jeffrey Epstein and his associates' crimes, but to protect powerful people accused of perpetrating those crimes. And this motion seeks the urgent release of records directly relevant to a congressional deposition of the Attorney General expected to occur, in the committee chairman's words, "very, very soon"—according to recent reporting, by April 10, 2026.[1]

The Epstein affair writ large encompasses multiple distinct scandals: Epstein and his associates' appalling crimes; the decades of impunity; and—at issue here—the federal government's apparent efforts to limit release of materials unfavorable to the president or other prominent people. American Oversight filed this Freedom of Information Act ("FOIA") lawsuit seeking to learn what instructions and training were given to agency personnel tasked with reviewing the Epstein files, and, specifically, what special treatment was ordered with respect to files naming Donald Trump. Now, over seven months after Plaintiff submitted its FOIA requests,

---

[1] Louis Casiano & Chad Pergram, *House Oversight Committee Demands Depositions from Bondi and Lutnick in Epstein Probe,* Fox News (Mar. 11, 2026, 7:43 PM), https://www.foxnews.com/politics/house-oversight-committee-demands-depositions-bondi-lutnick-epstein-probe.

Defendants have, in large part, not responded to them. Meanwhile, the need for the responsive documents grows more exigent by the day.

Questions about Defendants' handling of the files have become central to the rapidly evolving inquiry into an apparent decades-long government cover-up—an inquiry that will culminate just a few weeks from now in the United States House Committee on Oversight and Government Reform's closed-door deposition of Attorney General Bondi. That deposition is happening because Bondi has so far refused to answer those central questions about the review protocol, instructions, and release of records related to Trump, and because her prior statements about the files' contents, as well as her agency's compliance with the Epstein Files Transparency Act, appear to be false.

As has been demonstrated in recent months, only by confronting this primary deposition witness with the evidence will the truth come out. Defendants' long overdue responses to American Oversight's three concise FOIA requests are therefore now urgently needed to ensure the American public, through its representatives in Congress, gets truthful answers in Bondi's rapidly approaching deposition. These are precisely the sort of extraordinary circumstances that justify extraordinary relief: without a preliminary injunction, American Oversight and the public it serves will be irreparably harmed, for it is most unlikely that there will be any second chance to interrogate this United States Attorney General on these questions under oath, and the American people have already been denied the truth for too long.

**BACKGROUND**

During the 2024 presidential campaign, questions dogged then-candidate Donald Trump about his well-publicized friendship with Epstein. Both during the campaign and after he was sworn in for his second term as president, Trump and his top officials repeatedly promised full transparency. *See, e.g.*, Compl., ECF No. 1 ¶¶ 2 – 4. Attorney General Pam Bondi and FBI Director

2

Kash Patel made public commitments to release all of DOJ and FBI's files on Epstein and the agencies' investigations (the "Epstein files") and directed more than a thousand federal agency personnel to review the investigative holdings related to Epstein. *See, e.g.*, ¶¶ 2 – 4, 10. Despite the purported comprehensiveness of this review, which reportedly occurred in March 2025, its initial result was a two-page, unsigned memo from Defendants in July 2025 that claimed there was no "client list" and no "evidence that could predicate an investigation against uncharged third parties." *Id*. ¶ 7. This claim blatantly contradicts prior statements from Bondi herself. *See id*. ¶¶ 13 – 14.

In the wake of this memo's release, Ranking Member of the U.S. Senate Judiciary Committee Richard Durbin received information that agency personnel had been instructed to flag records that mention Trump. *See id*. ¶¶ 11, 16 & n.7. Within days of that disclosure, American Oversight submitted FOIA requests to Defendants seeking the training and instructions given to agency personnel to shed light on whether records mentioning Trump or any other powerful figures had been accorded special treatment. *See id*. ¶¶ 23, 33, 37, 41. The requests also seek communications and other records that would shed light on how the review was handled. *See id*. When Defendants failed to respond within the statutory timeframe allowed, American Oversight filed this suit to enforce its rights. Only OLC has responded to date. Haddix Decl., ¶¶ 15, 17-18.

The need for these records has become indisputably urgent. In November 2025, Congress overwhelmingly passed the Epstein Files Transparency Act which required DOJ to release all unclassified information related to Jeffrey Epstein and the investigation of Epstein and his associates no later than December 19, 2025—including records related to Defendants' review protocols and instructions. Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656, § 2(a)(8) (Nov. 19, 2025) ("EFTA") (requiring DOJ to release by Dec. 19, 2025, "[a]ll communications,

3

memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files").

Despite this clear command, DOJ released only a small fraction of the Epstein files by that date, drawing bipartisan criticism from members of Congress, from the public, and from the survivors of Epstein's abuse. And although DOJ has made subsequent releases of additional records, public reporting in late February and early March of 2026 indicates that more than 47,000 records remain withheld.[2] Some contain allegations that Trump sexually assaulted at least one minor. Three such records were only released after reporting revealed their existence[3]—and after Bondi's sworn statement to the House Oversight Committee in mid-February 2026 that all files had been released in compliance with the EFTA.

Serious questions remain about Defendants' handling of the Epstein files and whether Attorney General Bondi has made false statements in letters and sworn testimony to Congress. In a rare show of bipartisan cooperation, on March 4, 2026, on a motion by Representative Nancy Mace (R-SC), the House Oversight Committee voted to subpoena Bondi to sit for a closed-door deposition. Mace explained: "AG Bondi claims the DOJ has released all of the Epstein files. The record is clear: they have not."[4] A week later, House Oversight Committee Chair James Comer (R-

---

[2] *See, e.g.*, Sadie Gurman & Caitlin Ostroff, *There Are 47,635 Epstein Files Offline for Review, DOJ Says*, Wall St. J. (Mar. 3, 2026, 6:05 PM), https://www.wsj.com/us-news/law/there-are-47-635-epstein-files-offline-for-review-doj-says-bf2b31fe; Stephen Fowler, *Justice Department Withheld and Removed Some Epstein Files Related to Trump*, NPR (Feb. 24, 2026, 2:55 PM), https://www.npr.org/2026/02/24/nx-s1-5723968/epstein-files-trump-accusation-maxwell.

[3] *See, e.g.*, Erica Orden, *Justice Department Publishes Documents with Sexual Assault Allegations Against Trump*, Politico (Mar. 5, 2026, 10:31 PM), https://www.politico.com/news/2026/03/05/donald-trump-epstein-files-allegations-00816123.

[4] Nancy Mace (@RepNancyMace), X (Mar. 4, 2026, at 1:02 PM), https://x.com/RepNancyMace/status/2029256140190523658.

4

KY) confirmed that he expects Bondi's deposition will happen "very, very soon;"[5] the most recent reporting at the time of this filing indicates it will happen by April 10, 2026.[6]

That timing brings the urgency of American Oversight's need for these documents to a critical level. Bondi's deposition is expected to occur within weeks. Perhaps most salient to what will be covered in the deposition is that, based on DOJ's own statements, whistleblower disclosures, and the records that have been released so far, DOJ has failed to comply with the EFTA's additional requirement for release of information concerning the review and handling of the Epstein files. And that is precisely the information sought by American Oversight's requests.

American Oversight, whose primary mission is to inform the public so that it might hold its government accountable, therefore has an urgent need for records responsive to its FOIA requests and will be irrevocably harmed if non-exempt records are not produced ahead of Bondi's deposition. The instructions given to agency personnel reviewing the Epstein files last spring are directly relevant to DOJ's compliance with the EFTA and the topics upon which Attorney General Bondi will be deposed. The records sought by Plaintiff's requests promise to shed light on whether and how the apparent special handling of files concerning Trump has affected DOJ's release of the Epstein files. Members of Congress—especially the House Oversight Committee—and the public have the right to know prior to Bondi's deposition what instructions were given and all protocols that existed. This opportunity to depose her is potentially the only time Bondi will face questioning under oath as the United States Attorney General about these issues, and thus the records will lose

---

[5] Hailey Fuchs, *House Oversight Chair Moving Quickly To Schedule Epstein Testimony With Bondi, Lutnick,* Politico (March 11, 2026, 10:55am ET), https://www.politico.com/live-updates/2026/03/11/congress/bondi-and-lutnick-in-the-hot-seat-soon-00822724.
[6] *See* Casiano & Pergram, *supra* n.1.

significant value if they are not released prior to her deposition. American Oversight is therefore entitled to a preliminary injunction.

## I.    Defendants' Statements Raise Widespread Concern About the Integrity of Their Handling of the Epstein Files.

Reportedly in March 2025,[7] Defendants tasked approximately a thousand agency personnel with conducting "an exhaustive review of investigative holdings relating to Jeffrey Epstein." ECF No. 1 ¶¶ 5, 9–10. The review involved "digital searches of [FBI] databases, hard drives, and network drives as well as physical searches of squad areas, locked cabinets, desks, closets, and other areas where responsive material may have been stored," which yielded "more than 300 gigabytes of data and physical evidence." *Id.* ¶¶ 8–9.

This purportedly "exhaustive" review resulted in an unsigned two-page memo jointly released by Defendants on July 7, 2025 (the "Epstein Memo," attached as Ex. 1), which stated that DOJ and the FBI had found no "client list," no "credible evidence" that Epstein had "blackmailed prominent individuals as part of his actions," nor any "evidence that could predicate an investigation against uncharged third parties." *Id.* ¶ 7; Ex. 1. The Epstein Memo contradicted Attorney General Bondi's prior public claim that she had the Epstein client list "sitting on [her] desk right now to review," ECF No. 1 ¶ 13, prompting Senator Durbin to write to Bondi on July 18, 2025, asking her to provide further information and materials to address "serious questions about the veracity of [her] public statements," no later than August 1, 2025. *Id.* ¶ 10 n.7.[8] Senator

---

[7] *See* Katherine Faulders *et al.*, *DOJ, Pressured by Trump Supporters, Pushes FBI to Release More Epstein Files: Sources*, ABC 7 Chicago, Mar. 20, 2025, https://abc7chicago.com/post/jeffrey-epstein-doj-pressured-trump-supporters-pushes-fbi-release-more-files-sources/16057882/.

[8] *See* Letter from Richard J. Durbin, U.S. Senator, to Pam Bondi, Att'y Gen., U.S. Dep't of Just. (July 18, 2025), https://www.judiciary.senate.gov/imo/media/doc/2025-07-18%20RJD%20Letter%20to%20AG%20Bondi%20re%20Epstein.pdf. A copy is attached as Ex. 2. *See also* Allison Gill, *The Epstein Cover-Up at the FBI*, The Breakdown, July 20, 2025, https://www.muellershewrote.com/p/the-epstein-cover-up-at-the-fbi.

Durbin's letter stated that he had been informed that the personnel tasked with reviewing the Epstein files "were instructed to 'flag' any records in which President Trump was mentioned," *id.* ¶ 16; *see also id.* ¶ 10 n.7; Ex. 2 at 2, asked Bondi "[w]hat happened to the records mentioning Trump once they were flagged," and requested a log of the records mentioning Trump to the extent one exists. *Id.* ¶ 10 n.7; Ex. 2 at 3 – 4. To date, neither Bondi nor Defendants have answered those questions nor provided the requested information, despite being directly asked again during an October 7, 2025 Senate Judiciary Committee hearing.[9]

## II. American Oversight Requests Records Regarding Defendants' Review of the Epstein Files and Files Suit When Defendants Fail to Respond.

Following the release of the Epstein Memo and Senator Durbin's letter, on July 29, 2025, American Oversight filed FOIA requests with DOJ's Office of Information Policy ("OIP"), Office of Legal Counsel ("OLC"), and the FBI seeking to shed light on direction Defendants gave to agency personnel tasked with the review of the Epstein investigative holdings. *Id.* ¶¶ 31–32. The requests sought, *inter alia*: (1) "[r]ecords reflecting any training or instructions given to [DOJ or FBI] personnel related to review of investigative holdings regarding Jeffrey Epstein;" (2) email communications between top agency officials containing keywords related to the Epstein file review; (3) "formal or informal final directives (including informal email communications), guidance, protocols, or policies created by, issued to, or otherwise provided to [DOJ, FBI, or OLC] regarding the review of investigative holdings relating to Jeffrey Epstein;" and (4) "official and unofficial dissent memoranda and complaints" related to the review of the Epstein investigative

---

[9] *See* Press Release, Sen. Richard Durbin, "During Senate Judiciary Committee Oversight Hearing, AG Bondi Refuses to Answer Durbin's Questions on Whether DOJ Was Consulted by the White House Regarding Deploying the National Guard to Chicago" (Oct. 7, 2025), *available at* https://www.durbin.senate.gov/newsroom/press-releases/during-senate-judiciary-committee-oversight-hearing-ag-bondi-refuses-to-answer-durbins-questions-on-whether-doj-was-consulted-by-the-white-house-regarding-deploying-the-national-guard-to-chicago.

holdings. *Id*. ¶¶ 33, 37, 41; Exs. A, C, E. The requests sought records "created or otherwise in use between March 7, 2025 and April 7, 2025." *Id.* Each of the three requests specifically seeks records referencing any instructions that "contents that should be noted or flagged (including mentions of President Trump)." *Id*.

Due to Defendants' failures to respond to American Oversight's FOIA requests within the statutory timeframes, American Oversight filed suit on September 15, 2025. *See id*. After the government shutdown delayed Defendants' response date by nearly two months, Defendants filed a partial motion to strike the Complaint on December 8, 2025. *See* ECF No. 7. The Court denied that motion on January 21, 2026, ruling that the challenged allegations "largely quote administration officials" and were "hardly scandalous or prejudicial." ECF No. 10, at 1. The Court thus required Defendants to respond to the Complaint within 10 days, *see id.* at 2. Defendants filed an Answer on February 2, *see* ECF No. 11.

As of the date of the Answer, Defendants had yet to release any responsive records or otherwise communicate (apart from procedural communications between counsel) with American Oversight. *See* ECF No. 11 ¶¶ 36, 40, 43–45. On February 17, 2026, the Parties filed a Joint Status Report in which: (1) OLC anticipated responding by March 13, 2026, to Part 1 of the request, and completing its search for records responsive to Parts 2-4 by April 1, 2026; (2) FBI anticipated providing its first production of responsive documents by April 15, 2026, and its second by May 30, 2026; and (3) OIP promised to "use its best efforts" to complete its search by March 23, 2026, but provided no timeline for any productions. *See* ECF No. 13.

OLC responded on March 13, 2026, that it possessed no records responsive to any part of the request. Neither OIP nor FBI have provided any records or other response.

### III.    The Epstein Files Transparency Act Requires the Department of Justice to Release All Unclassified Information in the Epstein Files by the End of 2025.

Because public demand for access to the Epstein files and information about their handling continued and intensified following Defendants' release of their July 2025 memo, Congress enacted the Epstein Files Transparency Act in November 2025. The new law, which passed the House of Representatives by a vote of 427-1 and passed the Senate by unanimous consent,[10] requires that, "[n]ot later than [December 19, 2025], the Attorney General shall, subject to subsection (b), make publicly available in a searchable and downloadable format all unclassified records, documents, communications, and investigative materials in the possession of the Department of Justice . . . that relate to" nine broad categories of records, including: "[i]nternal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates," as well as "[a]ll communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files." Epstein Files Transparency Act, Pub. L. 119-38, 139 Stat. 656, § 2(a)(8) (Nov. 19, 2025).

### IV.    The Department of Justice's Shifting Statements About Its Review Protocols, Compliance with the Act, and Contents of the Files.

Despite the mandate that all releases happen by December 19, 2025, DOJ released only a portion of the Epstein files on that date, which prompted criticism from lawmakers from both

---

[10] *See* H.R. 4405, Epstein Files Transparency Act, Congress.gov, available at https://www.congress.gov/bill/119th-congress/house-bill/4405/all-actions (last visited Mar. 12, 2026).

political parties[11] and widespread public outcry, including from the survivors of Epstein's abuse.[12] On January 30, 2026, DOJ released a second tranche of documents, along with a memo signed by Deputy Attorney General Todd Blanche (Blanche Memo, attached as Ex. 3) that claims the release "marks the end of a comprehensive document identification and review process to ensure transparency to the American people and compliance with the Act." Ex 3 at 6.[13]

The Blanche Memo refers to a "review protocol" that "was updated from time to time," *id*. at 2. In March 2025, when Defendants reportedly conducted the review, reviewers were reportedly instructed to redact information.[14] But the only review protocol DOJ has released appears to be the one dated January 4, 2026, published on DOJ's website.[15] That memo makes no reference to "flagging" documents that reference Trump. Notably, records in the January 30 tranche indicate there were other, higher levels of review which may have followed different protocols.[16] At least

---

[11] *See* Anna Betts, *US Legislators Say Justice Department Is Violating Law by Not Releasing All Epstein Files*, The Guardian (Dec. 19, 2025, 6:15 PM), https://www.theguardian.com/us-news/2025/dec/19/epstein-files-release-deadline.

[12] *See, e.g*., Victoria Bekiempis, *Nearly All Epstein Files Still Unreleased a Month After Congress Deadline*, The Guardian (Jan. 19, 2026, 8:00 AM), https://www.theguardian.com/us-news/2026/jan/19/jeffrey-epstein-files-unreleased-trump-doj; Stephen Fowler, *With Few Epstein Files Released, Conspiracy Theories Flourish and Questions Remain*, NPR (Jan. 2, 2026 5:00 AM), https://www.npr.org/2026/01/02/nx-s1-5662638/epstein-files-release-trump-conspiracy-2026.

[13] It did not, in fact "mark[] the end," Ex. 3, as further documents continue to emerge.

[14] *See* Evan Perez & Hannah Rabinowitz, *FBI's Weekend Homework: Redact the Epstein Files*, CNN (March 25, 2025, 10:00 AM), https://www.cnn.com/2025/03/22/politics/fbi-redacting-epstein-files.

[15] *See* Memorandum from the Off. of the Deputy Att'y Gen. re: Attorney Review Protocol for Epstein Files (Jan. 4, 2026), *available at* https://www.justice.gov/media/1426281/dl?inline.

[16] *See, e.g*., Steve Eder & Devlin Barrett, *Trump Files Missing in Epstein Release Highlight Justice Dept.'s Missteps*, N.Y. Times (March 12, 2026, 10:11 AM), https://www.nytimes.com/2026/03/11/us/politics/trump-epstein-files-fbi-doj.html.

one released record refers to a "Transparency Project Processing Guidance," a "DOJ scoping guidance," and "flagged items."[17]

In short, while emails in the January 30 tranche indicate that certain instructions were given to reviewers, including an email by an FBI agent who listed "14 prominent men, with President Trump at the top," with "direct instructions [to] '[t]ake these names and build out new spreadsheet w all the derog on them,' referring to derogatory information found in the Epstein files," they are reportedly incomplete, and raise more questions than answers about how Defendants handled their review of the files.[18]

In a February 16, 2026, letter to Congress, Attorney General Bondi stated that the DOJ had released all the files in compliance with the EFTA.[19] This was not true, however, because DOJ subsequently released additional files.

On March 3, 2026, public reporting indicated more than 47,000 records remained withheld, including records that contain allegations by at least one woman that President Donald Trump sexually assaulted her when she was a child between the ages of 13 and 15.[20] Under pressure from Congress, late in the evening on March 5, 2026, DOJ released three FBI Form 302s reflecting

---

[17] FBI, *Epstein Overview: FBI Response*, *available at* https://www.justice.gov/epstein/files/DataSet%209/EFTA00172473.pdf ("Epstein Overview: FBI Response."

[18] Eder & Barrett, *supra* n.15.

[19] *See* Kayla Gaskins, *DOJ Declares Full Release of Epstein Files, But List of 300 Names Sparks Backlash*, ABC 7 News Little Rock (Feb. 16, 2026 4:02 PM), https://katv.com/news/nation-world/doj-declares-full-release-of-epstein-files-but-list-of-300-names-sparks-bipartisan-backlash-pam-bondi-elvis-madonna-princess-dianna-marilyn-monroe-kurt-cobain-larry-nasser-janis-joplin-thomas-massie-ro-khanna-lutnick-wasserman-andrew.

[20] *See, e.g.*, Gurman & Ostroff, *supra* n.2; Fowler, *supra* n.2. American Oversight does not express any view on the truth or credibility of these allegations, and cites them here only for the relevant background that the allegations—regardless of their truth—were unreleased files that Bondi claimed did not exist, and that may have been flagged for withholding pursuant to the very protocols that American Oversight's FOIA requests seek.

interviews conducted with one such woman.[21] However, while DOJ has criticized the credibility of these allegations, it has not explained why the Form 302s were withheld, what other similar records it continues to withhold, nor what protocols or instructions Defendants followed when deciding which records to flag or withhold.

Many of Attorney General Bondi's past statements regarding the Epstein files have proven to be untrue. *See, e.g.*, ECF No. 1 ¶¶ 7, 13 and Ex. 2 at 1 – 2. Just weeks prior to the March 5, 2026, disclosure of the Form 302s describing sexual assault accusations against Trump, Bondi testified under oath to the House Judiciary Committee that "there is no evidence that Donald Trump has committed a crime."[22] Representatives Ted Lieu and Dan Goldman have accused Bondi of perjury and called for a special counsel investigation.[23] Representative Nancy Mace stated on X (formerly Twitter) that "AG Bondi claims the DOJ has released all of the Epstein files. The record is clear: they have not."[24] For that reason, on March 4, 2026, Representative Mace made a motion in the House Oversight Committee, which passed on a bipartisan vote, to subpoena Attorney General Bondi to testify in a deposition before the committee.[25]

---

[21] *See* Orden, *supra* n.3; Hailey Fuchs, *Pam Bondi's in Trouble with Republicans on Capitol Hill*, Politico (Mar. 6, 2026, 1:40 PM), https://www.politico.com/news/2026/03/06/pam-bondi-epstein-subpoena-00816820.

[22] Sudiksha Kochi & Rebecca Beitsch, *Democrats Demand Special Counsel Investigation of Bondi, Accusing Her of Perjury*, The Hill (Feb. 25, 2026, 9:00 AM), https://thehill.com/homenews/house/5753607-bondi-perjury-trump-evidence/. Notably, she did not say that the available evidence was not credible or confirmed. She said there was "no evidence," which is plainly untrue given the existence of the witness statements.

[23] *Id.*

[24] Mace, *supra* n.4.

[25] *See* Dareh Gregorian *et al.*, *House Oversight Committee Votes to Subpoena Pam Bondi for Testimony on Epstein Files*, NBC News (Mar. 4, 2026, 6:33 PM), https://www.nbcnews.com/politics/justice-department/pam-bondi-subpoenaed-testify-epstein-files-house-oversight-committee-rcna261779.

Additionally, Bondi's statements in the spring of 2025 about the files' contents are contradicted by what reportedly exists and what DOJ has released. For example, Bondi told reporters at the White House on May 7, 2025, that the FBI was "diligently going through" "tens of thousands of videos of Epstein with children or child porn, and there are hundreds of victims."[26] However, lawyers and law enforcement officials in the Epstein criminal cases say they have seen no such trove of videos, noting that "neither [Epstein nor his accomplice, Ghislaine Maxwell] was charged with possession of child sex abuse material even though that offense would have been much easier to prove than the sex trafficking counts they faced."[27]

## V.    American Oversight's Expedited Processing Request.

Two days after the House Oversight Committee voted to subpoena Attorney General Bondi for further questioning about DOJ's handling of the Epstein files and compliance with the EFTA, American Oversight submitted a request to DOJ, OLC, and FBI for expedited processing of the FOIA requests at issue in this suit, with notice to counsel for Defendants. Haddix Decl. ¶ 11 and Attachment A. The statutory deadline for Defendants to respond to that request is Monday, March 16, 2026.

On March 11, 2026, Representative James Comer, chair of the House Oversight and Government Reform Committee, said he is scheduling testimony from Attorney General Bondi "very, very soon," reportedly in the next few weeks.[28] According to a post on X (formerly Twitter)

---

[26] C-SPAN, *User Clip: May 7, 2025: AG Bondi Pivots to CSAM Narrative in Epstein Review* (May 7, 2025), https://www.c-span.org/clip/white-house-event/user-clip-may-7-2025-ag-bondi-pivots-to-csam-narrative-in-epstein-review/5167343.

[27] Eric Tucker & Alanna Durkin Richer, *Mystery Surrounds the Jeffrey Epstein Files After Bondi Claims 'Tens of Thousands' of Videos*, AP (July 1, 2025, 6:07 PM), https://apnews.com/article/justice-department-jeffrey-epstein-pam-bondi-trump-fa39193d5b5ff91970428bf077a5ce44.

[28] *See* Fuchs, *supra* n.5.

later that night by a Fox News congressional correspondent, the deposition is expected to occur within 30 days, i.e., by April 10, 2026.[29]

On March 12, 2026, counsel for American Oversight asked counsel for Defendants in this matter via email:

> In light of the urgent need for [the requested] records ahead of Attorney General Bondi's deposition by the House Oversight Committee, which Committee Chair Rep. Comer said yesterday would happen "very soon," will Defendants agree to grant our [expedited processing] request and respond to those requests with complete production of all non-exempt responsive records by March 20?

Haddix Decl. ¶ 11 and Attach. B at 1.

On March 13, 2026, counsel for American Oversight conferred further by telephone with counsel for Defendants. Plaintiff's counsel followed up by email to confirm Plaintiff's position that "we will need to move for emergency relief early next week if Defendants cannot agree to complete production reasonably in advance of Bondi's deposition." Haddix Decl. ¶ 13 and Attach. B.

As of this filing, Defendants have not agreed to any expedited processing or production, nor have OIP or FBI responded to Plaintiff's FOIA requests.[30] Meanwhile, the urgency for these records continues to grow, prompting this emergency motion.

## LEGAL STANDARD

A plaintiff's likelihood of success on the merits is the "most important factor" in determining whether preliminary injunctive relief is warranted. *See Aamer v. Obama*, 742 F.3d

---

[29] Chad Pergram (@ChadPergram), X (Mar. 11, 2026, at 7:25 PM), https://x.com/chadpergram/status/2031874175803998210 ("Oversight Committee's [*sic*] wants Bondi to appear in 30 days for deposition…as part of Epstein probe.").

[30] Should Defendants grant expedited processing and agree to a production schedule that ensures production of records prior to the deposition of Attorney General Bondi, Plaintiff will promptly withdraw this motion to conserve judicial resources.

1023, 1038 (D.C. Cir. 2014). The "irreparable harm" showing is also critical. *See Chaplaincy of Full Gospel Churches v. England*, 454 F.3d 290, 297 (D.C. Cir. 2006) ("A movant's failure to show any irreparable harm is . . . grounds for refusing to issue a preliminary injunction."). The injury must be "both certain and great," as well as "actual and not theoretical," and "of such *imminence* that there is a clear and present need for equitable relief to prevent irreparable harm." *Mexichem Specialty Resins, Inc. v. Env't Prot. Agency*, 787 F.3d 544, 555 (D.C. Cir. 2015) (quoting *Chaplaincy*, 454 F.3d at 297) (emphasis in original); *see also Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 22 (2008) (explaining that plaintiff must "demonstrate that irreparable injury is *likely* in the absence of an injunction," not just that injury is a "possibility" (emphasis in original)). Finally, the injury "must also be . . . 'beyond remediation.'" *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021) (quoting *Elec. Priv. Info. Ctr. v. Dep't of Just.*, 15 F. Supp. 3d 32, 44 (D.D.C. 2014)).

## ARGUMENT

The records at issue are urgently needed before the House Oversight Committee deposes Attorney General Bondi to inform the public and Members of Congress about topics directly relevant to that proceeding. The records concern Defendants' handling of the Epstein files during their now-completed review of the Epstein investigative holdings, including whether Defendants have given special treatment to certain categories of files. After Bondi's deposition, the requested records will be of far less value—either to enable the public's meaningful engagement with their congressional representatives on an issue of massive national importance, or to enable Congress to hold DOJ's leader accountable for possible perjury or misconduct. Plaintiff is entitled to preliminary relief because: (1) it is likely (indeed, it is virtually certain) to succeed on the merits of its FOIA claims that Defendants have failed to timely respond to Plaintiff's requests for these records; (2) Plaintiff and the public it serves will suffer irreparable harm if production of non-

exempt requested records is further delayed; and (3) preliminary relief furthers the public interest more than it burdens other FOIA requesters.

This Court is empowered to order Defendants to expeditiously comply with their statutory obligations in this matter of urgent national concern. Plaintiff asks this Court to use that power to prevent irreparable harm to Plaintiff and the public it seeks to serve.

## I.    THIS COURT HAS JURISDICTION TO GRANT THE REQUESTED RELIEF.

The FOIA provides jurisdiction for this Court to consider this matter and grant all necessary injunctive relief:

> On complaint, the district court of the United States . . . in the District of Columbia[] has jurisdiction to enjoin the agency from withholding agency records and to order the production of any agency records improperly withheld from the complainant. In such a case the court shall determine the matter de novo . . . .

5 U.S.C. § 552(a)(4)(B). When an agency fails to comply with the applicable time-limit provisions in the FOIA, a requester "shall be deemed to have exhausted his administrative remedies with respect to such request . . . ." *Id.* § 552(a)(6)(C)(i); *see also Oglesby v. Dep't of the Army*, 920 F.2d 57, 62 (D.C. Cir. 1990) (holding that a requester may bring suit if an agency fails to comply with statutory time limits). This includes a failure to respond to a FOIA request within the statutorily imposed timeframe. *See Wash. Post v. Dep't of Homeland Sec.*, 459 F. Supp. 2d 61, 74 (D.D.C. 2006) ("[F]ailure to process FOIA requests in a timely fashion is 'tantamount to denial.'") (quoting H.R. Rep. No. 93-876, at 6 (1974)). American Oversight has therefore exhausted all applicable administrative remedies, and its claims are ripe for adjudication.

## II.    AMERICAN OVERSIGHT IS ENTITLED TO A PRELIMINARY INJUNCTION.

In considering a FOIA plaintiff's request for preliminary injunctive relief, a court must weigh four factors: (1) "whether the plaintiff has a substantial likelihood of success on the merits";

16

(2) "whether the plaintiff would suffer irreparable injury" absent injunctive relief; (3) "whether an injunction would substantially injure other interested parties"; and (4) "whether the grant of an injunction would further the public interest." *Al-Fayed v. CIA*, 254 F.3d 300, 303 (D.C. Cir. 2001); *Am. Oversight v. U.S. Dep't of State*, 414 F. Supp. 3d 182, 185 (D.D.C. 2019); *see also Serono Labs., Inc. v. Shalala*, 158 F.3d 1313, 1317–18 (D.C. Cir. 1998). The last two factors merge when the government is the opposing party. *Ctr. for Pub. Integrity v. United States Dep't of Def.*, 411 F. Supp. 3d 5, 14 (D.D.C. 2019) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

Courts in this District have repeatedly granted preliminary injunctions under FOIA where records were highly relevant for the requester and public to receive before an important upcoming event such as a congressional hearing. *See, e.g.*, *Am. Oversight*, 414 F. Supp. 3d at 187 (granting preliminary injunction because "the harm of delay beyond the anticipated timeline of the impeachment inquiry would be irreparable, especially with respect to those categories of requested records that are unlikely to be subject to FOIA exemptions"); *Elec. Privacy Info. Ctr. v. U.S. Dep't of Just.*, 416 F. Supp. 2d 30, 40–41 (D.D.C. 2006) (hereinafter "*EPIC*") (granting a preliminary injunction requiring expedited production of documents related to the Bush Administration's legal justifications for its warrantless wiretapping program in light of related ongoing congressional hearings).

All four factors here weigh heavily in favor of American Oversight's entitlement to a preliminary injunction.

### A. American Oversight Is Likely to Succeed on the Merits Because Defendants Failed to Comply with FOIA's Deadlines.

FOIA required Defendants to provide Plaintiff a prompt determination on its FOIA request and the timely processing and production of non-exempt responsive records within twenty working days—a deadline that passed seven months ago. FOIA unambiguously requires federal agencies

17

to make records "promptly available to any person" who reasonably describes the records sought in accordance with established procedures. 5 U.S.C. § 552(a)(3)(A); *see also id.* § 552(a)(6)(A)(i) (requiring a determination be communicated to a FOIA requester as to the scope of the records that will be produced and/or withheld, and the reasons for any withholdings, within 20 working days); *Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n*, 711 F.3d 180, 188 (D.C. Cir. 2013). Defendants' statutory obligations are clear: their 20 working days determination

> must be more than just an initial statement that the agency will generally comply with a FOIA request and will produce non-exempt documents and claim exemptions in the future. Rather, in order to make a 'determination' and thereby trigger the administrative exhaustion requirement, the agency must at least: (i) gather and review the documents; (ii) determine and communicate the scope of the documents it intends to produce and withhold, and the reasons for withholding any documents; and (iii) inform the requester that it can appeal whatever portion of the 'determination' is adverse.

*Id.* at 188 (citing Section 552(a)(6)(A)(i)).

Defendants cannot dispute—and indeed did not dispute in their Answer, ECF No. 11—that they have failed to meet their statutory obligations here. The records American Oversight seeks—the training, instructions, directives, and email communications relating to Defendants' review of the Epstein investigative holdings, including any "flagging" of ones that reference Trump—fall within the statutory category of agency records that an agency must produce under FOIA. *See U.S. Dep't of Just. v. Tax Analysts*, 492 U.S. 136, 146 (1989) (defining "agency records" as materials "create[d] or obtain[ed]" by the agency and within the agency's control at the time the request is made). In addition, the requests reasonably describe the records sought (specifying a timeframe, subject matter, and category of record) and comply with all necessary procedures. *See* ECF No. 1 ¶¶ 31–43. American Oversight thus has a substantial likelihood of success in establishing its entitlement to the requested records.

18

Moreover, Defendants admitted in their Answer that, over 220 days after American Oversight submitted its FOIA requests, they had still failed to provide the requisite determinations, produce any documents, or even provide any meaningful communications about the status of the requests. *See* ECF No. 11 ¶¶ 36, 40, 43, 44, 45. As of the date of this filing, only OLC had provided any substantive response. Thus, American Oversight also has a substantial likelihood of success in establishing that Defendants violated the statute.

Further, American Oversight has a virtually certain likelihood of success on the merits in its claim to release all responsive documents. In a more typical FOIA lawsuit, an agency might claim that certain documents were exempt from FOIA. But here, that defense is essentially eliminated by the EFTA, which requires release of "[a]ll communications, memoranda, directives, logs, or metadata concerning the destruction, deletion, alteration, misplacement, or concealment of documents, recordings, or electronic data related to Epstein, his associates, his detention and death, or any investigative files," subject only to very narrow exceptions not expected to apply to the documents sought by these FOIA requests. *See* Pub. L. No. 119-38, § 2(a)(8), 139 Stat. 656-57 (2025).

> **B.     American Oversight Will Be Irreparably Harmed Without the Requested Relief Because Attorney General Bondi Has Been Subpoenaed for a Deposition and the Requested Records Are Directly Relevant to Matters About Which She Is Likely to Be Questioned.**

"As the Supreme Court has observed, public awareness of the government's actions is 'a structural necessity in a real democracy.'" *Am. Oversight*, 414 F. Supp. 3d at 186–87 (quoting *Nat'l Archives & Records Admin. v. Favish*, 541 U.S. 157, 172 (2004)). "*Timely* awareness is equally necessary because "stale information is of little value." 414 F. Supp. 3d at 186 (quoting *Payne Enters. v. United States*, 837 F.2d 486, 494 (D.C. Cir. 1988)). Thus, when "time is

necessarily of the essence," agency delay causes irreparable harm. 414 F. Supp. 3d at 186 (internal quotes omitted).

Bondi has been subpoenaed by Congress to testify about Defendants' handling of the Epstein files—precisely the subject matter of the records at issue here, making those records invaluable now but of severely diminished value after the deposition. The Court should thus order OIP and FBI to produce all non-exempt records responsive to Plaintiff's requests ahead of Bondi's anticipated deposition date. *See Am. Oversight*, 414 F. Supp. 3d at 187 (granting preliminary injunction because "the harm of delay beyond the anticipated timeline of the impeachment inquiry would be irreparable, especially with respect to those categories of requested records that are unlikely to be subject to FOIA exemptions"); *see also EPIC*, 416 F. Supp. 2d at 40–41. To the extent Defendants claim that they have already publicly released all responsive records, Plaintiff's motion asks that they be ordered to clearly identify, in an index including Bates numbers, each such record.

**1. In light of Attorney General Bondi's approaching deposition, time is of the essence in obtaining records that show how Defendants instructed review of the Epstein files.**

Courts in this District have recognized that delayed processing of a FOIA request can cause irreparable harm in cases involving "ongoing proceedings of national importance." *Citizens for Responsibility and Ethics in Washington  v. Dep't of Just.*, Case No. 25-cv-04426-CKK, ECF No. 15 at 21 (Feb. 19, 2026) (citing *Brennan Ctr. for Just. at NYU Sch. of L. v. Dep't of Com.*, 498 F. Supp. 3d 87, 101 (D.D.C. 2020) and *Am. Immigr. Council v. U.S. Dep't of Homeland Sec.*, 470 F. Supp. 3d 32, 38 (D.D.C. 2020) (finding irreparable harm in case seeking "information that is highly relevant to an ongoing public debate"). The upcoming deposition of Attorney General Bondi is just such a proceeding, and the records American Oversight has requested seek information that is highly relevant to the matters about which she will be deposed. *See Am. Oversight*, 414 F. Supp.

20

3d at 187 (finding irreparable harm absent expedited release while the impeachment inquiry is ongoing where the records sought "could directly inform the present investigation and the surrounding public debate"). Without access to those records in advance of the deposition, American Oversight will be unable to fulfill its mission to inform the public and enable constituents' meaningful engagement with their elected representatives on an issue of massive national importance. *See id.*; ECF No. 1 ¶ 28.

Moreover, records that shed light on DOJ's instructions regarding the Epstein files review in the spring of 2025 are highly relevant to understanding how the review was handled after the passage of the EFTA, including whether Bondi and the DOJ complied with the EFTA. As noted *supra*, Senator Durbin cited a report to his office of an early "flagging" protocol, the Blanche Memo refers to a "review protocol" that "was updated from time to time," and an email released in January 2026 describes a protocol involving building a "spreadsheet w all the derog[atory information]" on 14 prominent men, including Trump. *See supra* p. 11. The fact that the review and flagging protocol keeps shifting, resulting in more documents being released this month only after press reports that those documents had been withheld, is likely to be a topic of Bondi's deposition. The review of records following passage of the EFTA did not occur in a vacuum and must be understood in the context of Defendants' handling of the Epstein files prior to the EFTA's enactment.

Specifically, records responsive to American Oversight's FOIA requests should offer high probative value concerning the whistleblower's allegations that files related to Trump received special treatment. Given the questions that remain regarding documents that reference allegations against Trump—documents that appear to have been "flagged" during the March 2025 review[31]—

---

[31] *See* Eder *et al.*, *supra* n.15.

the public and Congress need the information sought by American Oversight's requests to assess whether Defendants and Bondi have been truthful with Congress and have complied with the law.

Lastly, many, if not most, of the requested records are *not* exempt from disclosure. According to Defendants, the review of the Epstein investigative holdings that are the subjects of Plaintiff's requests concluded in July 2025 with the release of the two-page joint memo. *See* Ex. 1. The FOIA requests seek final, non-deliberative records such as "training or instructions" provided to agency personnel, "formal or informal final directives," and email communications with key terms broad enough to encompass non-exempt records. Compl. ¶¶ 33, 37, 41, ECF No. 1; *cf. Am. Oversight*, 414 F. Supp. 3d at 187 (rejecting argument that "American Oversight will not be irreparably harmed by further delay if the documents it seeks can be lawfully withheld from disclosure under FOIA's exemptions" where the FOIA requests could encompass both exempt and non-exempt records).[32]

> **2. The House Oversight Committee needs the requested records to effectively question Attorney General Bondi and test the truthfulness of her answers in her upcoming deposition.**

Furthermore, in light of the fact that more than one of Bondi's prior statements about the content and review of the Epstein files have proven to be untrue—including statements made under oath to the House Judiciary Committee that the Epstein files had all been released in compliance with the EFTA as of mid-February 2026, and that they contained no evidence that Trump committed a crime[33]—it is even more important that the Committee be able to test her credibility

---

[32] Importantly, the EFTA requires the release of "Internal DOJ communications, including emails, memos, meeting notes, concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates," Pub. L. No. 119-38, § 2(a)(7), 139 Stat. 656-57 (2025). DOJ released its redacted instructions for attorney review of the Epstein files, *see* Mem. from Office of the Deputy Attorney General, Attorney Review Protocol for Epstein Files (Jan. 4, 2026), *available at* https://www.justice.gov/media/1426281/dl?inline.
[33] Kochi & Beitsch, *supra* n.22.

during the deposition. The records American Oversight has requested are critically needed to do so, and Plaintiff will disseminate them publicly so that (1) citizens can engage their representatives in the public debate, and (2) their representatives can ask informed questions about Defendants' handling of the Epstein files and fully probe Bondi's responses during the deposition. Notably, DOJ released the Form 302s containing allegations against Trump only after widespread media coverage that they were missing from the publicly available files.[34] Likewise, whether Bondi's deposition will expose the truth about DOJ's handling of the review and release of the Epstein files depends upon those questioning her being equipped with as much documentary evidence as possible pertaining to that review.

In addition, American Oversight will suffer irreparable harm absent a court order requiring production of all non-exempt records responsive to its requests *before* Bondi's deposition because it will be unable to fulfill its mission to make those records publicly available so that constituents can move their representatives to ask fully-informed questions and hold Bondi and the DOJ accountable for potential violations of law. Where, as here, the FOIA requester "intends to widely disseminate the records obtained in [the] FOIA request to influence public action and contribute to" that debate, courts find the irreparable harm prong satisfied. *Am. Immigr. Council*, 470 F. Supp. 3d at 38 (rejecting the government's argument that the lack of a "concrete deadline by which [the FOIA requester plaintiff] needs the records" is detrimental to plaintiff's irreparable-harm argument) (citing *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 10, 13 (granting preliminary injunction where specific requested information directly related to matters about which the defendant was being questioned in time-sensitive impeachment proceeding)). *See also Wash. Post*, 459 F. Supp. at 75 (finding a likelihood for irreparable harm where the urgency of the FOIA request "is

---

[34] *See, e.g.*, Fuchs, *supra* n.21.

predicated on a matter of current national debate" and an "impending election") and *EPIC*, 416 F. Supp. 2d at 41 (finding that plaintiff would be irreparably harmed because it would be "precluded, absent a preliminary injunction, from obtaining in a timely fashion information vital to the current and ongoing debate surrounding the legality of the Administration's warrantless surveillance program").

Finally, this deposition presents a one-time opportunity. This is not civil litigation, where subsequent or follow-up depositions may be obtained for good cause where needed. Issuance of this subpoena to Attorney General Bondi required an extraordinary act of bipartisan cooperation. And the debate about Defendants' handling of the Epstein files is ongoing *now*. Courts in this Circuit have made clear that the harm happens when the public is deprived of access to information critical to an ongoing national debate. That harm is not magically cured or staved off by the distant possibility of another opportunity to engage in the debate down the road. Public reporting indicates the House Oversight Committee intends to proceed with Bondi's deposition as soon as possible, and potentially on or before April 10, 2026.[35] That deadline accelerates both the importance of the records and the timeline on which they will lose their value, dramatically increasing the need to rapidly receive records responsive to American Oversight's FOIA requests. Thus, the processing and production schedule that the parties agreed to in the February 17, 2026 joint status report, under which OIP committed to *no* firm production schedule and FBI will not even begin producing records until April 15, *see* ECF No. 13 ¶¶ 4-5—after the deposition is likely to take place—is now inadequate to prevent irreparable harm to American Oversight.

---

[35] *See* Casiano & Pergram, *supra* n.1.

C.    **The Public Interest and Balance of the Equities Weigh in Favor of Extraordinary Relief in Light of Attorney General Bondi's Rapidly Approaching Deposition.**

At the outset, it is well-established that "[t]here is public benefit in the release of information that adds to citizens' knowledge" of the activities of their government. *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 15 (quoting *Ctr. To Prevent Handgun Violence v. U.S. Dep't of Treasury*, 49 F. Supp. 2d 3, 5 (D.D.C. 1999). The Freedom of Information Act is rooted in the self-evident premise that transparency and disclosure are a public benefit in a participatory democracy. *U.S. Dep't of Just. v. Reporters Comm. for Freedom of the Press*, 489 U.S. 749, 772–73 (1989). Courts in this jurisdiction have long recognized that "there is an overriding public interest . . . in the general importance of an agency's faithful adherence to its statutory mandate." *Jacksonville Port Auth. v. Adams*, 556 F.2d 52, 59 (D.C. Cir. 1977); *accord Wash. Post*, 459 F. Supp. 2d at 76.

But the public benefit of injunctive relief here extends far beyond the general public's interest in transparency and faithful adherence to FOIA. Congress enacted FOIA to ensure that citizens can participate in informed public debate, and that interest grows with the gravity of public decisions at hand. *See NLRB v. Robbins Tire & Rubber Co.*, 437 U.S. 214, 242 (1978) ("The basic purpose of [the] FOIA is to ensure an informed citizenry, vital to the functioning of a democratic society, needed to check against corruption and to hold the governors accountable to the governed."). And Congress, having lost faith in Defendants' handling of the Epstein files, enacted EFTA to ensure their swift and broad release. Given the repeated questioning by members of Congress concerning whether Defendants have followed the law in their handling of the Epstein files and the House Oversight Committee's issuance of a subpoena to Attorney General Bondi for a rapidly approaching deposition to finally get truthful answers on that topic, prompt access to the requested records is critical to an informed public debate. Plaintiff's FOIA requests seek records that will shed light on Defendants' conduct and aid the public and House Oversight in evaluating

25

whether that conduct violated any laws or duties. The records may also shed light on Bondi's fitness to continue serving as the nation's chief law enforcement officer. At the most fundamental level, the records will enable the public and Congress to better participate in the ongoing debate and make informed decisions about what direction continued oversight of this important matter should take.

The public has a right to know how the government handled its review of the Epstein files, and specifically whether and to what extent Defendants issued or received orders to give special treatment to files that could prove embarrassing to President Trump. But, in addition to considering the public interest, the Court must also "consider the effect on each party of the granting or withholding of the requested relief." *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14 (citing *Winter*, 555 U.S. at 24 (internal quotation marks omitted)). Here, the balance of the equities weighs in favor of granting preliminary relief for two reasons. First, Defendants cannot claim to be harmed by an order compelling it to comply with its statutory obligations—indeed, Defendants are obligated to release the records under *two separate statutes* (FOIA and EFTA). Second, granting the requested relief does not unduly burden other FOIA requesters; FOIA recognizes that requests should be processed on an expedited basis ahead of other requests when there is an urgent need to inform the public about an actual or alleged federal government activity. 5 U.S.C. § 552(a)(6)(E)(v)(II).

In cases such as this one, where the requested records "directly inform [a] present investigation and the surrounding public debate" concerning actions by high-ranking government officials, courts in this District have found the balance of hardships and the public interest weigh in favor of granting injunctive relief. *See Am. Oversight*, 414 F. Supp. 3d at 187 (finding "the public's interest in disclosure of responsive, non-exempt records . . . outweighs any harm to other

FOIA requesters that might result from a temporary diversion of [the defendant agency's] FOIA resources to accelerate processing of this request"); *Ctr. for Pub. Integrity*, 411 F. Supp. 3d at 14 (finding hardship on the government "minimal" where the plaintiff was seeking only non-exempt information and where the government had already identified approximately 211 pages of potentially responsive documents).

In sum, it is essential that the public and Congress have as much relevant information as possible about Defendants' handling of the Epstein files, and absent the requested relief, they will both be deprived of information critical to effective questioning of Attorney General Bondi in her deposition. The public has a limited opportunity to make its voice heard, and it deserves information that can inform how it engages its House Members prior to Bondi's deposition. The passage of Representative Mace's motion to subpoena Bondi took an unusual act of bipartisan cooperation that may not happen again, so it is imperative that the public and members of Congress be as fully informed prior to that deposition as possible.

The Court should find that Plaintiff has established a strong likelihood of success on the merits of its FOIA claims, that Plaintiff and the public it serves likely will be irreparably harmed without a preliminary injunction ensuring timely processing and disclosure of the requested records, and that such an injunction serves the public interest more than it burdens any other party or FOIA requester.

### III.    The Court Should Not Require American Oversight to Post a Bond.

The Court should not impose a security requirement in this public interest litigation. *See e.g.*, *Nat'l Council of Nonprofits v. Off. of Mgmt. & Budget*, No. CV 25-239 (LLA), 2025 WL 597959, at *19 (D.D.C. Feb. 25, 2025) (declining to impose bond on a public interest plaintiff, highlighting that the trial court has discretion to require no bond at all, and noting that it would "defy logic" to require bond in a case where the defendants—a federal agency and its director—

27

would face no monetary injury from preliminary injunctive relief); *see also Mich. Citizens for an Indep. Press v. Thornburgh*, No. CIV.A. 88-2322, 1988 WL 90388, at *8 n.12 (D.D.C. Aug. 17, 1988) (declining to order security in part because action was "brought in the public interest on behalf of individuals whose resort to further judicial review would be impaired if compelled to pay the bond that defendants seek"). *See also, e.g.*, *People of State of Cal. ex rel. Van De Kamp v. Tahoe Reg'l Plan. Agency*, 766 F.2d 1319, 1325 (9th Cir. 1985) ("The court has discretion to dispense with the security requirement, or to request mere nominal security, where requiring security would effectively deny access to judicial review."); *City of Atlanta v. Metro. Atlanta Rapid Transit Auth.*, 636 F.2d 1084, 1094 (5th Cir. 1981) ("public-interest litigation [is] an area in which the courts have recognized an exception to the Rule 65 security requirement").

Here, American Oversight is a public interest plaintiff, and the Court has broad discretion to dispense with the requirement of bond, particularly in a case where Defendants face no monetary injury if preliminary injunction relief is imposed. Therefore, the Court should allow this case to proceed without a bond.

## CONCLUSION

For the foregoing reasons, Plaintiff American Oversight respectfully requests that this Court issue a preliminary injunction requiring Defendant to produce all non-exempt, responsive records by March 31, 2026, or ten days before the date of Attorney General Bondi's deposition, whichever is sooner; or in the alternative, to provide a declaration—sworn under penalty of perjury—averring that DOJ has posted all responsive records to its web site and providing an index that clearly identifies each such record, e.g., by Bates number, URL or hyperlink.

Dated: March 16, 2026                    Respectfully submitted,

                                         */s/ Elizabeth Haddix*
                                         Elizabeth Haddix

28

D.C. Bar No. 90019750
David Kronig
D.C. Bar No. 103064
AMERICAN OVERSIGHT
1030 15th Street NW, B255
Washington, DC 20005
(252) 389-7424
elizabeth.haddix@americanoversight.org

*Counsel for Plaintiff*

29