UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

AMERICAN OVERSIGHT,

      Plaintiff,

        v.                                                  Civil Action No. 25-3200 (JEB)

UNITED STATES DEPARTMENT OF
JUSTICE, *et al.*,

      Defendants.

## MEMORANDUM OPINION

The fallout from financier Jeffrey Epstein's decades of criminal activity has permeated all corners of society.  The Government has not been immune.  Following a controversial Department of Justice memo that claimed the agency had no information on the clients of Epstein's sex-trafficking enterprise, the public eye turned to DOJ and its handling of files related to the Epstein investigation.  Seeking information and transparency, Plaintiff American Oversight submitted Freedom of Information Act requests to the Department asking for the internal-training documents given to the DOJ personnel who reviewed and redacted the Epstein files.  The agency's search for records is now ongoing, with production expected to begin in a couple of weeks.  In Plaintiff's view, however, a faster timeline is needed.  The House Oversight Committee recently voted to subpoena the recently fired Attorney General Pamela Bondi to answer questions regarding the Department's handling of the Epstein files.  American Oversight now moves for a preliminary injunction ordering the production of its requested documents ahead of the April 14 deposition.  Because Plaintiff has not carried its burden of showing that such extraordinary relief is warranted, the Court will deny the Motion.

1

**I.    Background**

A.    <u>Statutory and Regulatory Scheme</u>

FOIA provides the public with "access to documents and records" held by federal agencies. <u>Pratt v. Webster</u>, 673 F.2d 408, 413 (D.C. Cir. 1982). After a FOIA request is submitted, agencies have 20 days (or 30 days under extenuating circumstances) to issue a determination on the request. <u>See</u> 5 U.S.C. § 552(a)(6)(A)(i); <u>id.</u> § 552(a)(6)(B)(i). A determination is different from the actual production of underlying records, <u>Daily Caller v. U.S. Dep't of State</u>, 152 F. Supp. 3d 1, 10 (D.D.C. 2015), and simply communicates "the scope of the documents [an agency] intends to produce and withhold, and the reasons for withholding any documents." <u>Citizens for Resp. & Ethics in Washington v. Fed. Election Comm'n</u>, 711 F.3d 180, 188 (D.C. Cir. 2013). If an agency fails to issue a determination within the allotted time, a plaintiff can then bring suit immediately without exhausting its administrative remedies. <u>Id.</u> at 182.

Agencies typically process requests in the order they are received, <u>Am. Oversight v. U.S. Dep't of Just.</u>, 292 F. Supp. 3d 501, 505 (D.D.C. 2018), but FOIA plaintiffs may seek expedited processing in special circumstances. <u>See</u> 5 U.S.C. § 552(a)(6)(E)(i). The statute itself lays out such circumstances, and agencies are also permitted to catalogue additional situations fit for expedition. <u>Id.</u> Relevant here, FOIA requires agencies to provide expedited processing where the requester shows a "compelling need" for the relevant information, <u>id.</u> § 552(a)(6)(E)(i)(I), meaning that (1) the requester is "primarily engaged in disseminating information" and (2) there is an "urgency to inform the public concerning actual or alleged Federal Government activity." <u>Id.</u> § 552(a)(6)(E)(v). Separately, DOJ also grants expedited processing for requests concerning "matter[s] of widespread and exceptional media interest in which there exist possible questions

about the government's integrity that affect public confidence." 28 C.F.R. § 16.5(e)(1)(iv).  If an agency denies a request for expedited processing or fails to timely respond to a request within ten days, the requester may seek judicial review.  See 5 U.S.C. § 552(a)(6)(E)(iii).

Unlike with determinations, FOIA contains no explicit deadlines for production.  The statute states only that documents must be made "promptly available" in regular processing or "as soon as practicable" in expedited processing.  Id. § 552(a)(3)(A); id. § 552(a)(6)(E)(iii).  Courts may use their equitable powers to order more specific deadlines when needed.  Payne Enters., Inc. v. United States, 837 F.2d 486, 494 (D.C. Cir. 1988) ("FOIA imposes no limits on courts' equitable powers in enforcing its terms."); Citizens for Resp. & Ethics in Washington v. U.S. Dep't of Just., 846 F.3d 1235, 1242 (D.C. Cir. 2017) ("This circuit's case law reflects the wide latitude courts possess to fashion remedies under FOIA, including the power to issue prospective injunctive relief.").

B.      Factual and Procedural Background

In July 2025, after long promising to release more information about individuals involved in Epstein's criminal activities, the Department of Justice issued a two-page memo claiming that it had little to no information on his clients or co-conspirators.  See Ryan Lucas, DOJ Says No Evidence Jeffrey Epstein Had a 'Client List' or Blackmailed Associates, NPR (July 7, 2025), https://perma.cc/XUF2-VLMR.  The public backlash was immediate.  As part of the widespread demand for more information, Plaintiff sent FOIA requests to three DOJ components — the Office of Information Policy, the Office of Legal Counsel, and the Federal Bureau of Investigation — seeking documents related to the training and guidance given to DOJ employees reviewing the Epstein files, which number in the millions.  See ECF No. 1 (Compl.), ¶¶ 31–43.  After DOJ failed to timely respond to the requests, Plaintiff filed this suit in September 2025,

3

alleging one count of inadequate search for records and one count of unlawful withholding of documents.  Id., ¶¶ 47–59.  Now, under this Court's supervision, the agency's search for records is ongoing, with the first production slated to occur on April 15, 2026.  See ECF No. 20 (Mar. Joint Status Report), ¶ 7.

Since the initial filing of this lawsuit, changing facts on the ground have shifted Plaintiff's approach to this litigation.  In November 2025, Congress enacted the Epstein Files Transparency Act, which requires that the Attorney General "make publicly available" by December 19, 2025, all DOJ files related to Epstein, including "[i]nternal DOJ communications . . . concerning decisions to charge, not charge, investigate, or decline to investigate Epstein or his associates."  Epstein Files Transparency Act, Pub. L. No. 119-38, § 2(a)(7), 139 Stat. 656, 656 (2025).  Following a series of unsatisfactory document releases, the House Oversight Committee voted on March 4, 2026, to subpoena now-former Attorney General Bondi to testify about DOJ's handling of the Epstein files and its compliance with EFTA.  See Michael Gold, House Panel Votes to Subpoena Pam Bondi over Epstein Files, N.Y. Times (Mar. 4, 2026), https://perma.cc/YUT6-8AMV.  That deposition is apparently set for April 14, 2026.  See Alanna Durkin Richer, Attorney General Pam Bondi Subpoenaed to Answer Questions from Congress About the Epstein Files, Associated Press (Mar. 17, 2026), https://perma.cc/WS9M-8F85.

Two days after the vote, American Oversight sent DOJ a request for expedited processing, citing a "compelling need" to obtain the documents prior to Bondi's deposition and alleging that the sought-after documents concerned a matter of "widespread and exceptional media interest" in which there "exist possible questions about the government's integrity."  ECF No. 17-3 (Amie Marie Napier Declaration) at ECF pp. 40–44.  Before DOJ responded, Plaintiff

4

filed this Motion on March 16.  See ECF No. 14-4 (PI Mot.) at 14 n.30.  It now seeks a

preliminary injunction compelling production of its requested documents before Bondi's April

14 deposition.  Id. at 28.  OLC has since responded stating that it has no responsive documents,

so the Motion concerns only OIP and the FBI.  See Mar. Joint Status Report, ¶ 3.  Bondi has

since been fired, but members of the House Oversight Committee have expressed interest in

moving forward with the deposition.  See Rebecca Beitsch, Key Democrat Says Bondi Can't

Escape Epstein Files Testimony, The Hill (Apr. 2, 2026), https://perma.cc/J4ZP-JYVJ.

## II.    Legal Standard

"A preliminary injunction is an extraordinary remedy never awarded as of right."  Winter

v. NRDC, 555 U.S. 7, 24 (2008).  In requesting such relief, "[t]he moving party bears the burden

of persuasion and must demonstrate, 'by a clear showing,' that the requested relief is warranted,"

Hosp. Staffing Sols., LLC v. Reyes, 736 F. Supp. 2d 192, 197 (D.D.C. 2010) (quoting

Chaplaincy of Full Gospel Churches v. England, 454 F.3d 290, 297 (D.C. Cir. 2006)), and that

"normal legal avenues are inadequate . . . to give plaintiff [the] relief he seeks."  Dorfmann v.

Boozer, 414 F.2d 1168, 1174 (D.C. Cir. 1969).  To obtain a preliminary injunction, a plaintiff

"must establish [1] that he is likely to succeed on the merits, [2] that he is likely to suffer

irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his

favor, and [4] that an injunction is in the public interest."  Sherley v. Sebelius, 644 F.3d 388, 392

(D.C. Cir. 2011) (quoting Winter, 555 U.S. at 20).  The final two factors merge when the

Government is the opposing party.  Nken v. Holder, 556 U.S. 418, 435 (2009).  While the

standard is, at times, described as a multifactor test, the first two factors are considered critical

requirements.  "[W]ithout a likelihood of success on the merits, a plaintiff is not entitled to a

preliminary injunction regardless of their showing on the other factors."  Brennan Ctr. for Just. at

NYU Sch. of L. v. Dep't of Com., 498 F. Supp. 3d 87, 96 (D.D.C. 2020) (citing Ark. Dairy

Coop. Ass'n v. U.S. Dep't of Agric., 573 F.3d 815, 832 (D.C. Cir. 2009)).  Similarly, a "failure

to show a likelihood of irreparable harm [is], standing alone, sufficient" to defeat a preliminary-

injunction motion.  Navajo Nation v. Azar, 292 F. Supp. 3d 508, 512 (D.D.C. 2018).  Needless to

say, coming up short on both factors is fatal to any motion for a preliminary injunction.

## III.    Analysis

Given such a standard, the Court here need only examine the first two factors, which it

does separately.

### A.    Likelihood of Success on Merits

The first Winter factor asks whether Plaintiff is likely to succeed on the merits of its

claim.  In a somewhat unusual twist, the parties disagree as to what exactly Plaintiff must show a

likelihood of success on.  American Oversight contends that it need establish success only on the

underlying claims, which inquiry turns solely on whether it has a right to the requested

documents.  See PI Mot. at 17–18.  This is because Plaintiff never sought expedited processing

in its Complaint, even though it subsequently asked for such relief from the Government.  See

Compl. at 17; PI Mot. at 13–14.  DOJ rejects that standard and maintains that to obtain a

preliminary injunction requiring production, American Oversight must show not only entitlement

to the documents, but also a right to expedited processing under the statutory and regulatory

criteria, an approach some district courts have adopted.  See ECF No. 17 (Opp.) at 11–12;

Democracy Forward Found. v. Off. of Mgmt. & Budget, 780 F. Supp. 3d 61, 79 (D.D.C. 2025).

Other courts have gone even further than the Government, adding an additional requirement that

plaintiffs — in addition to showing a right to expedited processing and production — show

entitlement to production by a date certain, blending an irreparable-injury requirement into the

likelihood-of-success prong.  Brennan Ctr., 498 F. Supp. 3d at 99; Citizens for Resp. & Ethics in Washington v. U.S. DOGE Serv., 769 F. Supp. 3d 8, 19 (D.D.C. 2025).

The Court agrees with the Government that a plaintiff seeking a preliminary injunction for production must, at a minimum, demonstrate its entitlement to expedited processing.  This is an intuitively appealing rule: a production order is, in essence, an expedited-processing order with a deadline for the completion of that processing.  It follows naturally that the standard for obtaining production should encompass the standard for securing expedited processing.  Democracy Forward Found., 780 F. Supp. 3d at 79; Citizens for Resp. & Ethics in Washington, 769 F. Supp. 3d at 19 ("When, as here, a requester seeks not just expedited processing but production of its requests by a date certain, it 'must do more than just show a likelihood of success that it is entitled to the expedited processing of its requests.'") (quoting Brennan Ctr., 498 F. Supp. 3d at 99).  Under Plaintiff's rule, conversely, a production injunction would be easier to obtain than an injunction for expedited processing.  That would make little sense.

Plaintiff disavows the notion that it is seeking any sort of expedited-processing remedy from this Court, contending instead that it requests only an injunction requiring production.  See ECF No. 18 (Reply) at 2; PI Mot. at 28 (asking Court to order "Defendant to produce all non-exempt, responsive records by March 31, 2026").  Yet, as just explained, the Court concludes that American Oversight must demonstrate a right to expedited processing in order to obtain such an injunction.  Indeed, to this Court's knowledge, no court in this district has ever granted a production preliminary injunction without first finding expedited processing warranted or noting that the Government had already agreed to expedite processing.  See, e.g., Elec. Priv. Info. Ctr. v. Dep't of Just., 416 F. Supp. 2d 30, 34 (D.D.C. 2006); Washington Post v. Dep't of Homeland Sec., 459 F. Supp. 2d 61, 76 (D.D.C. 2006); Am. Immigr. Council v. U.S. Dep't of Homeland

7

Sec., 470 F. Supp. 3d 32, 37 (D.D.C. 2020); Am. Oversight v. U.S. Dep't of State, 414 F. Supp. 3d 182, 184 (D.D.C. 2019); Ctr. for Pub. Integrity v. U.S. Dep't of Def., 411 F. Supp. 3d 5, 11 (D.D.C. 2019).  Nor at the hearing on the Motion could Plaintiff point to such a case.  See Mar. Hr'g Tr. at 3:18–21.

Having settled the debate over the correct standard to apply, the Court proceeds to the expedited-processing analysis.  To start, the timing of Plaintiff's Motion raises serious questions about whether the Court may even consider expedited processing at this juncture.  FOIA imbues courts with the power to review "[a]gency action to deny or affirm denial of a request for expedited processing [or the] failure by an agency to respond in a timely manner to such a request."  5 U.S.C. § 552(a)(6)(E)(iii).  At the time Plaintiff filed its Motion on March 16, there had been no denial or lack of timely response for the Court to review; indeed, the Government had until the following day to act.  Id. § 552(a)(6)(E)(ii)(I) (agencies must act on expedited-processing requests "within 10 days after the date of the request"); Opp. at 11 (calculating response deadline as March 17 for request submitted March 6).  The Court is thus unsure that it can consider the merits of expedited processing.  In any event, even assuming that it were so empowered, American Oversight has made no argument that it would be entitled to expedited review under the statutory criteria or DOJ's regulatory criteria.

The fact that Plaintiff has not secured expedited processing from the Government, or properly requested it from the Court, or argued for expedited processing in its briefing decisively undermines its ability to show likelihood of success on the merits.  This first factor thus lines up in the Government's column.

B.      Irreparable Harm

To prove irreparable harm, a plaintiff must demonstrate that it faces an injury that is "both certain and great," "actual[,] . . . not theoretical," and "of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm." Wis. Gas Co. v. Fed. Energy Reg. Comm'n, 758 F.2d 669, 674 (D.C. Cir. 1985) (quotation marks and emphasis omitted).

In the FOIA context, courts in our district have recognized that "where an obligation to disclose exists, a plaintiff may suffer irreparable harm if denied access to information that is highly relevant to an ongoing public debate." Am. Immigr. Council, 470 F. Supp. 3d at 38.  The FOIA irreparable-harm analysis accordingly examines whether the sought-after information is "1) time-sensitive and highly probative, or even essential to the integrity, 2) of an imminent event, 3) after which event the utility of the records would be lessened or lost." N.Y. Times Co. v. Def. Health Agency, 2021 WL 1614817, at *8 (D.D.C. Apr. 25, 2021) (cleaned up); see also Washington Post, 459 F. Supp. 2d at 75.  Courts have found irreparable harm when requested FOIA disclosures were integral to, and certain to lose value after, events with irreversible consequences, such as impeachment proceedings, congressional elections, census-apportionment processes, and even military strikes overseas. Ctr. for Pub. Integrity, 411 F. Supp. 3d at 7 (impeachment proceedings); Washington Post, 459 F. Supp. 2d at 74 (congressional elections); Brennan Ctr. for Just., 498 F. Supp. 3d at 94 (census-apportionment processes); Protect Democracy Project, Inc. v. U.S. Dep't of Def., 263 F. Supp. 3d 293, 300–01 (D.D.C. 2017) (military strikes in Syria).

American Oversight asserts, and the Court agrees, that the requested documents would be highly probative for an imminent event — Bondi's April 14 deposition.  Where Plaintiff's

9

arguments falter is at the third step: showing that the value of the information would disappear or sharply decline after the event.  As relevant as the documents may be for the deposition, that hearing is just one part of a broader ongoing reckoning with the Department of Justice's handling of the Epstein files.  There is no reason to think that the information Plaintiff seeks would become stale or irrelevant if produced after April 14.  Indeed, if the documents were truly revelatory, the House could call Bondi back for another hearing, the same way the House Oversight Committee voted to depose her after her February 2026 testimony before the House Judiciary Committee.  Similarly, a Senate committee could make inquiries.  Simply put, the Epstein brouhaha is not going away any time soon.

This situation lacks the imminent finality that have led courts to find irreparable harm. Consider, for instance, <u>Brennan Center</u>, a case in which the plaintiffs sought documents related to the 2020 census ahead of the census data being factored into the reapportionment process for the House of Representatives.  <u>See</u> 498 F. Supp. 3d at 101.  There, the court concluded that Plaintiff would face irreparable harm from a lack of timely production because "under current law[,] the census and the reapportionment process — and the opportunity for the public to be informed about them while they are ongoing — would be over."  <u>Id.</u>  Similarly, in <u>Protect Democracy Project, Inc.</u>, the court found irreparable harm where the looming event — a "military strike[]" — is the kind that "cannot be undone."  263 F. Supp. 3d at 301.  Because the sought-after records in this case, conversely, will continue to be of value to public debate after the deposition, Plaintiff has not made the requisite showing of irreparable harm to support its Motion.

*        *        *

In denying the preliminary injunction, the Court does not discount the public value of the documents Plaintiff seeks. This Opinion instead reflects the fact that the importance of sought-after information is not the test for securing a preliminary injunction. If that were the standard, such injunctions would be the norm, not the exception. Plaintiff's requested documents are already set to arrive in a timely fashion for the public conversation surrounding these controversies. The Court therefore sees no need to make use of an extraordinary and rarely granted equitable remedy.

## IV.    Conclusion

The Court, accordingly, will deny Plaintiff's Motion for a Preliminary Injunction. An Order so stating will issue this day.

/s/ *James E. Boasberg*
JAMES E. BOASBERG
Chief Judge

Date: April 3, 2026

11